## DONALD V. ROBERTS v. ROBERT A. WHITAKER.

178 N. W. (2d) 869.

June 26, 1970—No. 42270.

454

Douglas M. Head, Attorney General, and John R. Kenefick, Special Assistant Attorney General, for appellant.

Meier, Kennedy & Quinn and Timothy P. Quinn, for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

This action was brought to enjoin enforcement of a subpoena duces tecum issued by Robert A. Whitaker, public examiner of the State of Minnesota. Plaintiff, Donald V. Roberts, also moved to quash the subpoena. The State of Minnesota responded with a motion to dismiss the action because the complaint failed to state a cause of action. Following a hearing on the motions, the district court issued an order denying defendant's motion to dismiss the action, granting plaintiff's motion to quash the subpoena, and certifying that the questions presented are important and doubtful for the purpose of appeal to the Supreme Court pursuant to Rule 103.03 (i), Rules of Civil Appellate Procedure. Defendant then brought this appeal from the order.

In August and September of 1969 the office of the public examiner was engaged in an examination of accounts and records relating to the receipt and disbursement of public funds by Ramsey County.[1] During the course of this examination, the pub-

---

[1] Minn. St. 215.01 provides: "The department of the public examiner is hereby created, which shall have the duty and power to supervise all public accounts, to prescribe and install systems of accounts and reports, *to inspect all records and transactions connected with the receipt, disbursement, and custody of public funds,* to investigate the use and security of all public appropriations and property, to ascertain the sources and condition of the public revenue, investments, loans, and

lic examiner received a citizen complaint which raised the question of whether Ramsey County Commissioner John Daubney had any interest in a certain parcel of land, known as "Roberts tract at Island Lake," acquired by the county on or about June 2, 1969, pursuant to a settlement of a condemnation proceeding brought by the county against Roberts Construction, Inc., a Minnesota corporation of which plaintiff Roberts is the president. *Commissioner Daubney had abstained from voting on all proceedings before the Ramsey County Board of Commissioners relating to the acquisition of the "Roberts Tract at Island Lake."* An employee of the public examiner informed the trial court by affidavit that plaintiff had acknowledged making certain payments to Daubney relating to the subject real estate but had said that the payments were for legal fees. Acting on this information, the public examiner served a subpoena duces tecum on plaintiff Roberts, dated September 5, 1969, requiring Roberts to produce:

"* * * [A]ll and sundry records relating to your financial affairs, as well as all and sundry records relating to any and all corporations, partnerships, or other businesses in which you have a financial interest, and in which you have custody or control, actual or constructive, of such records, including but not limited to all journals, ledgers, bank statements, paid checks, corporate minute books, stock transfer records, articles of partnership and all records of receipts and disbursements and all supporting documents thereto for the calendar years 1964, 1965, 1966, 1967, 1968 and period January 1, 1969 through July 31, 1969 * * *."

Plaintiff did not comply with the subpoena, but moved to quash it and brought this action to enjoin any future enforce-

---

debt, and to verify the public funds and examine and report upon the condition and security thereof." (Italics supplied.)

Minn. St. 215.11 sets forth the procedure to be followed by the public examiner in his periodic examination of the records of counties within the State of Minnesota.

ment efforts. To support his claims plaintiff submitted an affidavit by Daubney[2] in which he stated that he had no interest in the "Roberts tract at Island Lake" or in Roberts Construction Inc., and an affidavit by plaintiff in which he stated that the condemnation proceedings under review were involuntary and noncollusive, that the amount received was considerably less than the appraised value of the land, and that Daubney had never had any interest in the land or the corporation. Plaintiff also relied upon affidavits of two of his attorneys to the effect that the condemnation proceedings had been legitimate and noncollusive, and that compliance with the subpoena would cause an overwhelming inconvenience and hardship to Roberts and the companies involved. The public examiner's motion to dismiss was based upon an affidavit of an employee in which he stated, in addition to the facts iterated above, that it would be necessary to examine all of the subpoenaed books and records in order to determine whether Daubney had an interest in the land and to discover "what corporate or business vehicles were used for the acquisition, holding and disposition of such real estate." It was also averred on behalf of the public examiner that the investigation was made in good faith and not for the purpose of harassment or embarrassment. From the granting of plaintiff's motion and the denial of defendant's motion, this appeal results.

The office of the public examiner was created by L. 1878, c. 83, to supervise the books and accounts of the various agencies and subdivisions of the government of the State of Minnesota. The intended function of the public examiner is to make periodic

---

[2] By a supplementary affidavit dated May 26, 1970, Mr. Daubney acknowledged participation in two real estate transactions with Ramsey County, the first as co-donor of a roadway easement under a deed of gift, the second as escrow agent for the transfer of certain tax-deficient property. Mr. Daubney also informed this court in the supplementary affidavit that at the commencement of the condemnation proceedings here under review he requested to withdraw as legal counsel to Mr. Roberts and the corporations involved.

investigations of the use of public funds in order to uncover evidence of misfeasance, malfeasance, or nonfeasance by public officials.[3] Minn. St. 215.07 requires the public examiner to report findings of such conduct to the attorney general for corrective or punitive action.

The powers of the public examiner were significantly expanded by L. 1913, c. 555, § 10, now embodied in § 215.16, to include the power to investigate the affairs of private individuals and corporations to discover misfeasance by public officials. Minn. St. 215.16 provides:

"In all matters relating to his official duties, the *public examiner shall have the powers possessed by courts of law to issue subpoenas and cause them to be served and enforced.* All state and county auditors, treasurers, and other public officials, and their respective deputies and employees, all officers, directors, and employees of all railway and other companies required by law to pay taxes to the state upon a gross earnings basis, and all persons having dealings with or knowledge of the affairs or methods of such companies, and likewise *all corporations, firms, and individuals having business involving the receipt, disbursement, or custody of the public funds shall at all times afford reasonable facilities for such examinations,* make such returns and reports to the public examiner as he may require, *attend and answer under oath his lawful inquiries, produce and exhibit such books, accounts, documents, and property as he may desire to inspect, and in all things aid him in the performance of his duties.*" (Italics supplied.)

While we have never before had occasion to consider the scope of authority of the public examiner to issue compulsory process directed to private individuals and corporations, we approved of enforced compliance under § 215.16, subject to the constitutional privilege against self-incrimination, in State v. Nolan, 231

---

[3] See, Kotschevar v. Township of North Fork, 229 Minn. 234, 250, 39 N. W. (2d) 107, 116.

Minn. 522, 44 N. W. (2d) 66, and again in State v. Gensmer, 235 Minn. 72, 51 N. W. (2d) 680, certiorari denied, 344 U. S. 824, 73 S. Ct. 24, 97 L. ed. 642.

■ If the public examiner is to realize any significant degree of success in his efforts at discovering irregularities in the handling of public funds, it is imperative that he have broad powers of investigation into the records and accounts of the agencies of state and municipal government. The legislature has seen fit to supplement these powers by giving the public examiner the "powers possessed by courts of law" to subpoena private records and accounts. Of course, private books and records which would potentially reveal misfeasance by public officials will often be in the possession or control of persons who are interested in keeping such misfeasance concealed. Moreover, the public examiner may often have no basis for substantiating or rejecting his suspicions of malfeasance until he is able to investigate the relevant private records. Therefore, it is in the public interest that the public examiner be allowed ready access to private records and accounts, unhampered by a heavy burden of first initiating charges, establishing the evidentiary competency of the material sought, or having to convince a magistrate that the records sought will uniquely substantiate and verify instances of mishandling of public funds.

■ On the other hand, it is self-evident that individuals' right of privacy will be seriously threatened if the government is allowed to search private books and papers freely upon the slightest suspicion by some government agent of wrongdoing.[4] Also, as alleged in this case, the inconvenience and expense of producing one's private books and records can become a serious hardship. Therefore it is apparent that the powers of the public

---

[4] E. g., Federal Trade Comm. v. American Tobacco Co. 264 U. S. 298, 44 S. Ct. 336, 68 L. ed. 696; Hemphill v. Lenz, 413 Pa. 9, 195 A. (2d) 780. See, also, Rogge, *Inquisitions by Officials: A Study of Due Process Requirements in Administrative Investigations—II, III,* 48 Minn. L. Rev. 557, 1081.

examiner to subpoena private records and accounts must be limited in scope, and that private individuals and corporations subjected to such compulsory process must be afforded a means of determining whether any specific subpoena issued by the public examiner violates their right to privacy or is otherwise so unreasonable that it should not be enforced.

■ The legislature imposed a limitation of this sort upon the authority of the public examiner when it limited the subpoena power under § 215.16 to "the powers possessed by courts of law." While this appeal does not require us to specify all implications that would follow from this limitation, it may be said generally that a subpoena issued by the public examiner has the same force and effect as a subpoena issued by a court of law—i. e., that noncompliance with a subpoena of either category, or noncompliance with an enforcement order issued pursuant to such subpoena, is punishable as contempt.[5] However, it does not follow that the public examiner may issue subpoenas only under the same conditions and circumstances as a trial court could issue them—e. g., that a complaint must first be filed and action commenced.[6] Such a limited power is already available to the attorney general in his role of prosecuting for misfeasance by public officials, so the provisions of § 215.16 would add nothing if the public examiner was required to press charges and commence action before issuing subpoenas.

In State ex rel. R. & W. Comm. v. Mees, 235 Minn. 42, 49 N. W. (2d) 386, we held that to require a person who is not subject to the Railroad and Warehouse Commission's supervisory jurisdiction to comply with its subpoena duces tecum is not a violation

---

[5] E. g., Consolidated Rendering Co. v. Vermont, 207 U. S. 541, 28 S. Ct. 178, 52 L. ed. 327; 2 Am. Jur. (2d) Administrative Law, § 271. See, also, See v. Seattle, 387 U. S. 541, 87 S. Ct. 1737, 18 L. ed. (2d) 943; State v. Nolan, 231 Minn. 522, 44 N. W. (2d) 66.

[6] Sullivan v. Dickson (9 Cir.) 283 F. (2d) 725, certiorari denied, 366 U. S. 951, 81 S. Ct. 1906, 6 L. ed. (2d) 1243, 368 U. S. 884, 82 S. Ct. 127, 7 L. ed. (2d) 84.

of due process of law, citing United States v. Morton Salt Co. 338 U. S. 632, 70 S. Ct. 357, 94 L. ed. 401; and Oklahoma Press Pub. Co. v. Walling, 327 U. S. 186, 66 S. Ct. 494, 90 L. ed. 614. We see no reason why this principle should not be applicable to a subpoena issued by the public examiner to a person or corporation not subject to his supervisory jurisdiction. Indeed, plaintiff does not contend that due process of law would have been violated had the subpoena been more reasonable in its scope and had it been shown that the records sought were relevant and material to some lawful inquiry brought by the public examiner.

In the Mees case, unlike the United States Supreme Court cases on which it relies, no issue was raised as to the reasonableness of the subpoena or as to the relevancy and materiality of the evidence sought. The Oklahoma Press case, while recognizing that the Fifth Amendment privilege against self-incrimination and the Fourth Amendment freedom from unreasonable searches and seizures pose limitations upon the investigative powers of a government agency, nevertheless approved the enforcement of a subpoena of corporate records despite the fact that there had been no showing of reasonable cause to believe that there had been any violation of law, nor even that any such violation, if disclosed by the investigation, would be under the coverage of the act pursuant to which the investigation was made. In the Morton Salt case, the following rationale was given in support of the investigative powers of government agencies (338 U. S. 632, 642, 652, 70 S. Ct. 357, 364, 369, 94 L. ed. 401, 410, 416):

"The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the

Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

\* \* \* \* \*

"\* \* \* Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest."[7]

These cases also reaffirm the holding of Endicott Johnson Corp. v. Perkins, 317 U. S. 501, 509, 63 S. Ct. 339, 343, 87 L. ed. 424, 429, in which a subpoena of corporate records was approved on the grounds that "evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act, and it was the duty of the District Court to order its production for the Secretary's consideration."

While such broad investigative authority is perhaps necessary for a government regulatory agency in its attempt to supervise commercial transactions and operations, we are not convinced that the efforts of the public examiner to secure evidence of mishandling of public funds would be frustrated if confined to narrower limits of investigative authority. The documents sought in the Morton Salt, Oklahoma Press, and Endicott Johnson cases probably constitute the only reliable evidence which would substantiate the charges there contemplated. By contrast, the public examiner in this case has access to the affidavits of both Daubney and plaintiff; the records and accounts of Daubney both as an individual and as a practicing attorney; the Minnesota State

---

[7] See, also, United States v. Powell, 379 U. S. 48, 85 S. Ct. 248, 13 L. ed (2d) 112; United States v. Della Rocca (2 Cir.) 388 F. (2d) 525; United States v. Marshall Durbin & Co. of Haleyville, Inc. (5 Cir.) 363 F. (2d) 1; Federal Maritime Comm. v. Zim Israel Navigation Co. (S. D. N. Y.) 263 F. Supp. 618.

and Ramsey County records pertaining to the registration of "Roberts tract at Island Lake," to the payment of taxes and other assessments thereon, and to the composition of the corporations and business ventures in which plaintiff participates; and to the testimony of other witnesses, such as other members of the Ramsey County Board of Commissioners and other business associates of plaintiff and Daubney. Furthermore, the United States Supreme Court cases cited above rest on the rationale that the corporations there being investigated are large interstate commercial ventures, created by the government for a limited purpose, imbued with a public interest, and being investigated to determine whether they have complied with that public interest.[8] The investigation in this case is intended to disclose only whether Daubney held any interest in "Roberts tract at Island Lake" on June 2, 1969, and could thereby derive any proceeds from the Ramsey County condemnation proceedings. Since the business operations of plaintiff individually and of all business ventures with which he is associated as documented in the subpoenaed books and records are not alleged to constitute a violation of any law, plaintiff is entitled to a substantially greater degree of protection of his right to privacy than was afforded in the Oklahoma Press, Morton Salt, and Endicott Johnson cases.[9]

■ Protection of the right to privacy of a nongovernmental person or corporation served with compulsory process by the public examiner pursuant to § 215.16 begins with a right to the judicial determination of the reasonableness of the subpoena and the relevancy and materiality of the evidence sought before such individual or corporation is required to suffer the consequences of noncompliance with the subpoena.[10] Plaintiff here applied for

---

[8] Accord, Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. ed. 652; United States v. Bausch & Lomb Optical Co. 321 U. S. 707, 64 S. Ct. 805, 88 L. ed. 1024.

[9] United States v. Stanack Sales Co. (3 Cir.) 387 F. (2d) 849; Hemphill v. Lenz, *supra*.

[10] See, See v. Seattle, *supra;* Matter of Rushmore v. Lipson, 45 Misc. (2d) 487, 257 N. Y. S. (2d) 316.

judicial review by bringing his action to enjoin enforcement of the subpoena and by moving to quash it. The trial court must be afforded a high degree of discretion in conducting a hearing and deciding the issue of the validity of the subpoena.[11] While no precise formula can be offered for determining what type of evidence and what degree of proof should be deemed necessary to establish that the subpoena is reasonable and that the evidence is material and relevant to some lawful investigation, the public examiner[12] should at least be required to establish the following:[13]

(a) The subpoenaed documents are specified with sufficient detail and clarity to be readily identifiable.

(b) The volume of documents subpoenaed is not so great as to cause an unnecessary hardship or expense to the private party or corporation in the production of those documents or in the ongoing business operations of the individual or corporation.

(c) The source of the public examiner's suspicions that a mishandling of public funds has occurred is a reliable source or

---

[11] See, Rule 45.02, Rules of Civil Procedure; Herron v. Blackford (5 Cir.) 264 F. (2d) 723; Fleming v. Montgomery Ward & Co. (7 Cir.) 114 F. (2d) 384, certiorari denied, 311 U. S. 690, 61 S. Ct. 71, 85 L. ed. 446; Aacon Contracting Co. v. Association of Catholic Trade Unionists (E. D. N. Y.) 175 F. Supp. 659, affirmed (2 Cir.) 276 F. (2d) 958.

[12] The public examiner has the burden of establishing the reasonableness of the subpoena and the relevancy and materiality of the evidence sought. Cf. Boeing Airplane Co. v. Coggeshall, 108 App. D. C. 106, 280 F. (2d) 654; Sorrells v. Cole, 111 Ga. App. 136, 141 S. E. (2d) 193; Matter of Rushmore v. Lipson, *supra*. Contra, Mississippi Road Supply Co. v. Walling (5 Cir.) 136 F. (2d) 391, certiorari denied, 320 U. S. 752, 64 S. Ct. 57, 88 L. ed. 447. The burden of refuting such proof then shifts to the party seeking to have the subpoena quashed.

[13] Other formulations are offered in Hale v. Henkel, *supra;* Schwimmer v. United States (8 Cir.) 232 F. (2d) 855, certiorari denied, 352 U. S. 833, 77 S. Ct. 48, 1 L. ed. (2d) 52; Provenzano v. Porter (9 Cir.) 159 F. (2d) 47, certiorari denied, 331 U. S. 816, 67 S. Ct. 1303, 91 L. ed. 1834; Vulcan Waterproofers, Inc. v. Maryland Home Improvement Comm. 253 Md. 204, 252 A. (2d) 62.

that there is reliable evidence to believe that such a mishandling has occurred.

(d)   There is no other adequate source of evidence available to the public examiner which could be explored at less expense or with less interference with privacy that would substantiate his suspicions of mishandling of public funds.

(e)   In light of all of the circumstances, one might reasonably expect that the subpoenaed documents will disclose evidence which is relevant and material to the instance of mishandling of public funds contemplated by the public examiner.

As has often been stated,[14] a government agency is not licensed to engage in a general fishing expedition into the affairs of private parties on the mere hope that some useful information will be disclosed.

■   The facts of this case indicate that the trial court had insufficient evidence to determine that any infringement of plaintiff's right to privacy as a result of enforcement of this subpoena was reasonable or that the documents sought would disclose evidence which was material and relevant to the lawful investigation of some instance of mishandling of public funds. Even if the subpoenaed records disclosed that Daubney was a stockholder in Roberts Construction, Inc., on June 2, 1969, we are not convinced that this subpoena could be reasonably expected to disclose evidence material and relevant to any lawful investigation by the public examiner. However, the affidavits deny any such hypothetical state of affairs. Furthermore, there is no showing that it is necessary to subpoena these specific documents in order to substantiate the public examiner's suspicions, nor that all of these documents would be necessary to such an investigation. For these reasons we affirm the order of the trial court quashing the subpoena without prejudice to the public examiner's right

[14] E. g., Federal Trade Comm. v. American Tobacco Co. *supra;* Penfield Co. of California v. S. E. C. (9 Cir.) 143 F. (2d) 746, certiorari denied, 323 U. S. 768, 65 S. Ct. 121, 89 L. ed. 614.

to reinstitute proceedings in compliance with the standards here set forth.

Affirmed.