**In re Gary KOHN, d.b.a. Racing Unlimited, Inc., Sports Accessories International, and Minnesota Auto Specialties, Appellants,**

v.

**STATE of Minnesota, By Hubert H. HUMPHREY III, its Attorney General, Respondent.**

No. C1–82–1419.

Supreme Court of Minnesota.

July 15, 1983.

Bruce C. Douglas, Edina, for appellants.

Hubert H. Humphrey III, Atty. Gen., and Don L. Johnson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

SIMONETT, Justice.

The district court granted the motion of the Minnesota Attorney General on behalf of the state to compel respondents in a civil investigative proceeding to produce business documents and to answer interrogatories, and it denied respondents' motion for a protective order. Granting discretionary review of the trial court's order, we affirm in part, reverse in part, and remand for further proceedings.

Minn.Stat. § 8.31 (1982) instructs the Attorney General to investigate violations of the business and trade laws of this state and authorizes discovery without commencement of a civil action.[1] Pursuant to this authority, the Attorney General seeks to investigate the affairs of respondents Gary Kohn and three Minnesota corporations, Racing Unlimited, Inc., Sports Accessories International, and Minnesota Auto Specialties. Kohn and the three corporations are here as appellants seeking appellate review.

Gary Kohn owns, is an officer of, and operates several Minnesota corporations, including the three involved here, all of which are engaged in the mail order sale of merchandise. Racing Unlimited, Inc., and Minnesota Auto Specialties sell auto parts and accessories, and share product line, building, and records. Sports Accessories International markets auto-related novelty items such as T-shirts and decals. The companies advertise and do business on a national scale. The businesses, as measured by the number of orders placed, have grown significantly over the last 3 years.

The state and also the Minnesota Better Business Bureau have received numerous complaints from customers claiming that they received neither the ordered merchandise nor a refund of the cash deposit which must accompany each order, usually a sum in the range of $60 to $120. As of July 1982, the Attorney General's office had received 29 complaints against the three corporations, of which 15 remained unresolved. The Attorney General also reviewed the Minnesota Better Business Bureau files

1.  Minn.Stat. § 8.31, subd. 1 (1982), provides in part: "The attorney general shall investigate violations of the law of this state respecting unfair, discriminatory and other unlawful practices in business, commerce, or trade * * *."
     Subd. 2 provides in part:
     In connection with investigation under this section the attorney general upon specifying the nature of the violation or suspected violation may obtain discovery from any person regarding any matter, fact or circumstance, not privileged, which is relevant to the sub-

ject matter involved in the pending investigation, in accordance with the provisions of this subdivision. The discovery may be obtained without commencement of a civil action and without leave of court, except as expressly required by the provisions of subdivision 2a.
     Respondent Attorney General advises us that the statutes of thirty-nine states and three federal statutes authorize compulsory precomplaint discovery.

which revealed 103 complaints against the three companies, 62 remaining unresolved. In addition, the state has received requests for assistance from attorney general's offices in 12 states and from Better Business Bureaus in three of those states and nine others. In a motion to expedite this appeal, the Attorney General claims it continues to receive complaints.

On June 29, 1982, the state issued a Civil Investigative Demand (here referred to as the Demand or a C.I.D.) addressed to Gary Kohn consisting of a demand for the production of six kinds of documents and a set of 27 interrogatories. The demand for documents included copies of advertisements, manufacturers' agreements and monthly bank statements. The interrogatories dealt with advertising practices, customer orders and source of products. The Demand indicated that it was issued pursuant to Minn. Stat. § 8.31 (1982) to determine whether Kohn and the three companies had violated Minn.Stat. §§ 325D.44 (deceptive trade practices), 325F.67 (false statement in advertising), or 325F.69 (consumer fraud) (1982). Kohn's counsel countered with a letter to the Attorney General denying the legality of the Civil Investigative Demand, but offering to discuss the resolution of specific complaints. The state promptly responded by initiating this proceeding, filing with the district court a motion for an order compelling compliance with the C.I.D. Kohn then filed a cross-motion for the issuance of a protective order. Both parties filed supporting affidavits. The affidavits of the Attorney General's office summarized the extent and general nature of the complaints, stated that the Better Business Bureau had been unsuccessful in resolving many of the complaints and that, as to complaints handled directly by the Attorney General, some were resolved but only after repeated requests, typically requiring at least three letters to Kohn.

On September 8, 1982, the trial court granted the state's motion to compel and denied Kohn's motion to protect. On appeal, Kohn claims that the Attorney General did not make a sufficient showing of the statutory grounds for compelling compli-

ance with a Civil Investigative Demand, and that the Demand was an unreasonable search and seizure under the fourth amendment, compelled self-incrimination contrary to the fifth amendment, and was discriminatory law enforcement in violation of the equal protection clause of the fourteenth amendment.

I.

We first discuss appellant Kohn's claim that the Attorney General failed to make the sufficient factual showing required by the statute for issuance and enforcement of a Civil Investigative Demand. Minn.Stat. § 8.31, subd. 2 (1982), provides in part:

> When the attorney general, *from information in his possession, has reasonable ground to believe* that any person has violated, or is about to violate, any of the laws of this state referred to in subdivision 1 [the state consumer protection laws], he shall have power to investigate those violations, or suspected violations * * *.

(Emphasis added.) The subdivision goes on to authorize the Attorney General to obtain discovery by various means such as written interrogatories, demand for production of documents and depositions. Subdivision 2a then deals with failure to comply:

> If any person fails or refuses to answer interrogatories, to produce materials, or to be examined under oath, as required by the provisions of subdivision 2, the attorney general may give notice that he will apply to a district court, and the court, *on a showing by the attorney general of cause therefor,* may issue such order as may be required to compel compliance with the discovery procedures authorized by this section.

(Emphasis added.)

Appellants argue that the trial court erred in finding, on the affidavits submitted, that the Attorney General had reasonable grounds to believe that Kohn had violated or was about to violate the law. Kohn points out that his affidavit shows that, for the 3-year period involved, his

companies received 47,655 orders and only 111 complaints, or complaints for only 0.2% of orders received, and that of the complaints received, a large number have been resolved. Further, Kohn argues that the Attorney General has not made any independent investigation to determine the merits of any individual consumer complaint. For these reasons, Kohn asserts that the Attorney General has failed to show a reasonable ground for believing there has been or will be a violation of the law.

Appellants' argument misconceives the nature of these proceedings. The Attorney General is currently conducting only an investigation. No complaint has been filed and the parties are not at the trial stage. The purpose of the state's investigation is not to prove pending charges, for the state has made none, but to ascertain if there is any substance to the customer complaints so that charges should or should not be brought. See, e.g., Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 201, 66 S.Ct. 494, 501, 90 L.Ed. 614 (1946); Genuine Parts Co. v. Federal Trade Commission, 445 F.2d 1382, 1387–88 (5th Cir.1971); Klein v. Fair Employment Practices Commission, 31 Ill.App.3d 473, 482, 334 N.E.2d 370, 377 (1975). See generally Hannah v. Larche, 363 U.S. 420, 442–44, 80 S.Ct. 1502, 1514–16, 4 L.Ed.2d 1307 (1960).[2] This precomplaint procedure was created because other methods of obtaining information had proved unsatisfactory. The voluntary cooperation of the party being investigated was not always forthcoming. Nor did it seem fair for the state to file a bare-bones complaint, as it could do, and then undertake discovery in an adversary setting to ascertain if it had a case. Experience has indicated that the precomplaint investigative procedure, somewhat akin to a state's visitorial powers over corporations, is often the best and fairest

manner in which to proceed. See Petition of Gold Bond Stamp Co., 221 F.Supp. 391, 393 (D.Minn.1963).

■ Thus, to obtain discovery, our statute requires only that the Attorney General has reasonable grounds to believe there is or may be a violation of state law. It is enough to show, on the basis of information the Attorney General already has, that it is reasonable for the investigation to continue.

Kohn argues that the Attorney General has made an inadequate showing for a Civil Investigative Demand because the consumer complaints were not first investigated or substantiated. But the purpose of the discovery is to ascertain if there is any substance to the consumer complaints from the party who is perhaps in the best position to know, namely, the party against whom the complaint is made.

■ The fact that Kohn files an affidavit controverting the allegations of the state does not necessarily establish a lack of reasonable grounds for the Attorney General to believe that there have been violations. This is not to say that a respondent may not dispute the state's showing of reasonable grounds and that there may not be instances where a C.I.D. should not issue. See People ex rel. Babbitt v. Herndon, 119 Ariz. 454, 581 P.2d 688, 690 (1978). We simply hold that at this administrative investigatory stage the trial court is not required to weigh evidence and resolve factual disputes in the same manner as at a trial. Though the factual showing be disputed, even so, if it affords a reasonable ground for believing the investigation should continue, it will suffice. To require the state to substantiate its case before it may be allowed to investigate it would put the cart before the horse.

It is also well settled that administrative investigations by state attorneys general under their statutory enforcement responsibilities are governed by the same standards. See, e.g., Scott v. Association for Childbirth at Home, International, 88 Ill.2d 279, 295 n. 3, 58 Ill.Dec. 761, 769 n. 3, 430 N.E.2d 1012, 1020 n. 3 (1981).

**2.** The investigative powers of administrative agencies and the constitutional limits on these powers have been settled since the late 1940's. See Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (Fair Labor Standards Act); United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (Federal Trade Commission).

■ Next, appellant Kohn argues that there was no "reasonable ground to believe" that he had violated or was about to violate the law because the consumer complaints constituted a small fraction of his total business. We do not find this argument persuasive. The presence of over 100 complaints is not *de minimis,* nor does it follow, as appellants suggest, that all the customers who did not file complaints were necessarily content. Moreover, of the number of complaints that were filed, a high percentage were alleged to have been handled in a dilatory manner.

We affirm the trial court's finding that the Attorney General, at the time he issued the Civil Investigative Demand, had, in his possession, information which afforded him reasonable grounds to believe the law had been or was about to be violated.

## II.

Appellant Kohn next argues that the state's demand for production of business documents constitutes a "constructive search" of the business premises and violates the fourth amendment prohibition against unreasonable search and seizure. The trial court found no merit to this argument and neither do we.

■ A demand for documents may be so unbounded or so over-inclusive or vague as to constitute a "constructive search." *See generally Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 202–05, 66 S.Ct. 494, 502–04, 90 L.Ed. 614 (1946). The permissible breadth, however, is considerable. In *Oklahoma Press* the United States Supreme Court likened the administrator seeking information to a grand jury. The administrator's investigation is "essentially the same as the grand jury's * * * and is governed by the same limitations. These are that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be 'limited * * * by forecasts of the probable result of the investigation * * *.'" 327 U.S. at 216, 66 S.Ct. at 509. The fourth amendment "at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant." *Id.* at 208, 66 S.Ct. at 505.

■ *Oklahoma Press* was extended and summarized in *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). While acknowledging the possible burdensomeness of a federal agency's demand for information, the court upheld the request, stating:

> Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. * * * But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

*Id.* at 652, 70 S.Ct. at 368 (citation omitted). To this we might add that an investigation that is undertaken for an improper purpose, such as harrassment, would violate due process. *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

■ *Oklahoma Press* and *Morton Salt* are dispositive here.[3] Kohn concedes that the Attorney General is acting within his statutory powers. The Civil Investigative Demand asks specific questions and requests sufficiently described documents. Kohn claims that delays in filling orders are due to lack of items in stock and that time

---

**3.** Courts in other states have applied the *Morton Salt* standard to reject fourth amendment challenges to Civil Investigative Demands issued by attorney general's offices and consumer protection agencies. *See, e.g., Matanuska Maid, Inc. v. State,* 620 P.2d 182 (Alaska 1980); *Scott v. Association for Childbirth at Home, International,* 88 Ill.2d 279, 58 Ill.Dec. 761, 430 N.E.2d 1012 (1981); *Commonwealth ex rel. Hancock v. Pineur,* 533 S.W.2d 527 (Ky.1976); *Steele v. State ex rel. Gorton,* 85 Wash.2d 585, 537 P.2d 782 (1975). See also Judge Nordbye's opinion in *Petition of Gold Bond Stamp Co.,* 221 F.Supp. 391 (D.Minn.1963), and, for a general discussion, see 1 Davis, *Administrative Law Treatise* § 4.2 (2d ed. 1978).

must be allowed for customers' checks to clear and to verify orders. The information requested by the state is reasonably relevant to these claims. Here, as in civil discovery, relevance should be given a liberal interpretation, with the recognition that relevancy limits would be more circumscribed at any subsequent trial. We hold, therefore, that the state's request here for business documents does not violate the fourth amendment prohibition against an unreasonable search and seizure.

### III.

Appellant Kohn's argument for fifth amendment protection presents a somewhat greater problem. Since a subsequent criminal fraud action is possible against Kohn, the privilege against self-incrimination is implicated insofar as he personally is required to answer questions. It is essential, however, that we distinguish Kohn personally from his corporations and that we distinguish between the demand to produce documents and the demand to answer interrogatories.

■ First of all, it is well established that corporations, partnerships and other business entities cannot claim the privilege against self-incrimination. *State v. Alexander,* 281 N.W.2d 349, 353 (Minn.1979). This is true even when the corporation is merely an alter ego of the owner. *Hair Industry, Ltd. v. United States,* 340 F.2d 510 (2d Cir.), *cert. denied* 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965). Further, a long line of cases has established that "an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974).

■ Here the documents requested are corporate documents. The appellant corporations have no privilege not to produce them. Neither does Kohn, since, if he is holding them, clearly he is doing so as a representative of the corporations. Kohn seeks to escape this conclusion by arguing that the Civil Investigative Demand is addressed to him, individually, and therefore in his personal rather than representative capacity.[4] There is no merit to the argument. Here the Demand asks for business records, not Kohn's personal papers. "[T]he papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). The Attorney General's Demand is not to be read myopically; when the title of the proceedings, the definitional section and the information requested are read together as a whole, it is plain that Kohn was served as an agent of his corporations to obtain records of those corporations. We hold that neither Kohn nor his corporations may assert any privilege against self-incrimination against production of the requested documents and that Kohn, as the corporate agent, must produce the documents.

■ This brings us to the 27 interrogatories served by the Attorney General. Here again, since the corporations have no privilege against self-incrimination, the corporations must answer the interrogatories. A corporation, however, acts only through individuals who are its agents. When the agent answers interrogatories for the corporation, he or she is being compelled to give testimony. Since the fifth amendment prohibits testimonial self-incrimination, agents may assert the privilege on their own behalf. The United States Supreme Court resolved this paradox in *United States v.*

---

4. The definitional section of the state's C.I.D. says: "Gary Kohn means Gary Kohn individually, Racing Unlimited, Inc., Sports Accessories International, Minnesota Auto Specialties and any other corporation, partnership or other enterprise to which Gary Kohn is or has been related and which sells or has offered for sale auto parts and accessories." Kohn, in his affidavit, states his three businesses named in these proceedings are all corporations.

Appellants cite *State v. Alexander,* 281 N.W.2d 349 (Minn.1979), where Alexander was entitled to assert the privilege, but no collective entities were involved in that case.

*Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), holding that the corporate agent may invoke the privilege, but, in that case, the corporation must appoint an agent who can, without fear of self-incrimination, furnish the requested information insofar as it is available to the corporation. 397 U.S. at 8, 90 S.Ct. at 767. The Court in *Kordel* deferred resolution of the situation where no one can answer for the corporation without fear of self-incrimination, and neither is there any reason for us to reach that issue at this time.

We hold, therefore, that Kohn cannot be compelled to give testimony that may incriminate him by answering the state's interrogatories. In the current posture of this case, we can do no more than make this general holding, and we remand to the trial court for further proceedings as to how the interrogatories might be answered. It seems to us the state has several options: (1) require appointment of a corporate agent to answer (the C.I.D. might have been drafted to include this alternative); (2) insofar as the interrogatories request information that is available in documentary form, change the interrogatory to a demand for the pertinent corporate document; (3) provide Kohn with immunity from the use of the compelled answer, *see, e.g., Attorney General v. Colleton,* 387 Mass. 790, 444 N.E.2d 915, 918 (1982); or (4) require Kohn to show the trial court, as to each specific interrogatory for which the privilege is asserted, that he is entitled to the privilege. *Minnesota State Bar Association v. Divorce Assistance Association,* 311 Minn. 276, 278, 248 N.W.2d 733, 737 (1976). (It appears that some of the questions may be answered without fear of self-incrimination since appellants' brief contains some of the information sought by the state which Kohn has refused to provide.)

## IV.

Kohn's final claim, that he is the victim of discriminatory enforcement contrary to the equal protection clause, is without merit. Even assuming the selective prosecution defense is available at this time,

when Kohn is not being prosecuted but only investigated, Kohn has not made any showing of discrimination. Indeed, it appears the Attorney General's office has other mail-order auto parts operations under investigation. Nor is there any merit to his claim that he is being punished for his failure to cooperate with the Minnesota Better Business Bureau. Nor does the mere assertion in Kohn's affidavit that compliance with the C.I.D. would impose "an undue burden" establish that any such burden exists to the extent that a protective order might issue.

Affirmed in part, reversed in part, and remanded for further proceedings.