In the Matter of an Inquiry Concerning the Honorable Lawrence AGERTER.

No. CX–83–1350.

Supreme Court of Minnesota.

Aug. 17, 1984.

Kelton Gage, Mankato, for appellant.

Charles W. Faulkner, Minneapolis, David A. Shulman, Rochester, for respondent.

Stephen E. Forestell, St. Paul, for MN Judges Assoc.

Ron Hook, Amy M. Silberberg, Minneapolis, for MN Civil Liberties Union.

## PER CURIAM.

The Board on Judicial Standards petitions this court for a writ of prohibition prohibiting the district court from quashing a subpoena compelling a judge to appear before the Board to answer questions about a complaint filed against the judge. We grant the writ in part and deny in part.

On May 23, 1983, the Board on Judicial Standards received a letter from a private citizen claiming, according to the testimony of the Board's secretary, that Lawrence Agerter, a county judge for Dodge and Olmsted Counties, had an alcohol problem and was having sexual relations with the complainant's ex-wife. Rule 6(c)(1) of the Board provides that "[u]pon receipt of a complaint, report, or other information as to conduct that might constitute grounds for discipline, the executive secretary shall conduct a prompt, discreet, and confidential investigation and evaluation." Pursuant to this rule and at the direction of the Board, the executive secretary, George Kurvers, proceeded to investigate. As the first step, in keeping with the confidential nature of the inquiry, Mr. Kurvers arranged to meet with Judge Agerter on June 28. At that meeting, Mr. Kurvers informed the judge of the complainant's identity and of the two allegations but refused to show the complainant's letter to the judge or to give him a copy. Mr. Kurvers asked for a tape recorded statement. On the advice of his lawyer who was present, Judge Agerter declined to give any statement. This ended the interview.

Mr. Kurvers was then directed by the Board to obtain a subpoena requiring the judge to appear at the Board's next meeting on August 19, 1983. Mr. Kurvers obtained the subpoena from the Ramsey County District Court and served it on Judge Agerter on August 1, accompanied by a letter stating that "the Board will be making inquiry concerning allegations of your having a sexual relationship with [M.K.] and an alcohol problem."

Judge Agerter moved to quash the subpoena. The motion was heard in Ramsey County District Court on August 16. Mr. Kurvers testified that after he had served the subpoena he had made some further investigation. He said he had learned that the complainant and his wife had been divorced on May 14, 1983, that Judge Agerter did not handle the divorce, and that the judge was not married. Mr. Kurvers testified that he had been informed by a reliable source that Judge Agerter had twice been at Hazelden for treatment of a drinking problem and that the judge was again drinking. Judge Agerter's attorney filed an affidavit that a licensed psychologist and a certified chemical dependency practitioner had each examined the judge and concluded that the judge had no prior or current chemical dependency problems.

At the hearing, the trial judge stayed enforcement of the subpoena and on September 1 ruled that the subpoena be quashed because the judge's right to privacy outweighed the public's interest in disclosure. The trial court assumed that the Board had dropped its claim of an alcohol problem and his decision, therefore, discussed only the allegation of sexual misconduct. The Board's petition for a writ of

prohibition now brings the matter before us.

At this point, before framing the precise issues, it is important, we think, to outline generally the Board's functions and procedures. Minn. Const. art. 6, § 9, authorizes the legislature to "provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice." The legislature authorized the court to discipline a judge for "incompetence in performing his duties, habitual intemperance or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Minn. Stat. § 490.16, subd. 3 (1982). The legislature created the Board on Judicial Standards to assist in this task and authorized this court to make rules to implement judicial discipline. *See* Minn.Stat. §§ 490.15 and 490.16 (1982). Under its rules, the Board has the power to investigate allegations of judicial misconduct,[1] and may initiate "upon any reasonable basis" an inquiry into the conduct of a judge, upon receipt of a complaint.[2] The complaint itself is privileged.[3] If the complaint provides information about conduct that might constitute grounds for discipline, the executive secretary conducts a confidential investigation.[4] The Board has the power to compel by subpoena the testimony of witnesses at any stage of an investigation.[5]

Finally, the Board is to consider the results of the preliminary, confidential investigation conducted by the executive secretary to determine if there is probable cause to believe there is conduct which might be grounds for discipline. Rule 6(e). If probable cause is found, a complaint is issued by the Board. Rule 8(a). The judge may respond in writing or in person to this complaint, and the Board, following the response, dismisses the complaint if it finds insufficient cause to proceed. Rules 8(a)(3) and 8(b). If the proceedings are not so terminated, the Board then files a formal statement of charges with the executive secretary and, at this point, confidentiality ceases and the matter proceeds to a public hearing. Rule 8(c)(1).

Judge Agerter argues, as does amicus Minnesota Judges Association, that the subpoena sought by the Board exceeds its authority. They argue that on the basis of the complaint and the other information obtained by the Board, the Board lacks the authority to subpoena the judge to appear and answer questions as part of its investigation.

■ Generally, an investigative subpoena will be enforced if (1) the investigation is within the jurisdiction and authority of the board or agency, (2) the subpoena is sufficiently specific, (3) the investigation is for a proper purpose and the information sought is relevant to that purpose, and (4) the use of the subpoena power is reasonable and does not violate constitutional rights. *See Pollard v. Roberts,* 283 F.Supp. 248, 256 (E.D.Ark.1968); *Kohn v.*

---

1. Board on Judicial Standards Rule 2(a)(1) (1982), which states:
 (a) The board shall have the power to receive information, investigate, conduct hearings, and make recommendations to the supreme court concerning:
 (1) Allegations of judicial misconduct; * *.

2. Rule 6(a)(1) states: "An inquiry relating to conduct of a judge may be initiated upon any reasonable basis, including oral or written complaints made by judges, lawyers, court personnel, or members of the general public."

3. Rule 6(b) states: "A complaint submitted to the board or its staff or testimony related to the complaint shall be absolutely privileged, and no

civil action predicated on the complaint may be instituted against any complainant or witness, or their counsel."

4. Rule 6(c)(1) reads: "Upon receipt of a complaint, report, or other information as to conduct that might constitute grounds for discipline, the executive secretary shall conduct a prompt, discreet, and confidential investigation and evaluation."

5. Rule 2(e)(1) states: "At all stages of a proceeding under these rules, both the board and any judge being investigated shall be entitled to compel by subpoena the attendance and testimony of witnesses, including the judge as witness, and to provide for the inspection of documents, books, accounts, and other records."

*State*, 336 N.W.2d 292, 297 (Minn.1983); *Roberts v. Whitaker*, 287 Minn. 452, 463–64, 178 N.W.2d 869, 877 (1970). Clearly, the subpoena here is specific, is for a proper purpose, and seeks information reasonably relevant to the purposes of the investigation. At issue, we think, are the first and fourth requisites. The questions before us, then, which we take up in turn, are whether issuance of the subpoena is within the Board's authority, and, if so, if the judge's rights of privacy and freedom of association have been violated.

One further preliminary matter. Our review of the hearing transcript convinces us that the Board's counsel during a colloquy with the trial judge did not abandon the claim of misconduct arising out of the alleged alcohol problem. Both the alcohol problem and sexual misconduct are before us.

### I.

When Judge Agerter challenges the Board's jurisdiction or authority, he is really claiming that the informal complaint received by the Board fails to allege a disciplinary matter and, therefore, the Board lacks power to proceed with any investigation. A secondary argument is that the Board failed to establish the necessary extrinsic evidentiary basis for issuance of an investigative subpoena.

■ Under the Board's own rules, an investigation may be initiated "[u]pon receipt of a complaint, report, or other information as to conduct that might constitute grounds for discipline * * *." Rule 6(c)(1). Under Rule 6(a)(1), an investigation may be undertaken "upon any reasonable basis." If the Board is to discharge properly its responsibilities of ensuring the integrity of the judicial system, it must have, we believe, broad powers and the discretion to exercise those powers even with respect to matters debatably involving judicial discipline. We hold, therefore, consistent with its rules and due process, that the Board has the authority to proceed with a preliminary investigation when, on the information before it, the Board has a reasonable basis to believe there might be a disciplinary violation.

Here the informal complaint alleged that the judge had an alcohol problem and sexual relations with a woman not his wife. Without more, argues Judge Agerter, there is no allegation of a disciplinary violation and, therefore, no authority or jurisdiction to investigate. There must also be, argues the judge, some further showing that his job performance has been impaired or that his misbehavior has been conducted openly or scandalously so as to bring the judicial office into disrepute. *See, e.g., In re Snyder*, 336 N.W.2d 533, 534 (Minn.1983) (adulterous conduct "the subject of gossip and speculation in the community"). We think respondent and amicus view the informal complaint too narrowly. Implicit in the allegations, we think, is that the alleged misconduct does implicate disciplinary violations.

■ Alcoholism is known to affect adversely job performance and public behavior. Minn.Stat. § 490.16, subd. 3 (1982), specifically lists "habitual intemperance" as a ground for discipline. In addition to the informal complaint, the Board learned that the judge had received treatment twice for alcoholism and was "drinking again." We hold that the Board had sufficient information before it to afford a reasonable basis to believe that there might be a disciplinary violation, and that the Board, therefore, had authority to proceed with its investigation of the "alcohol problem."

■ We conclude also that the Board had authority to investigate the allegation of sexual liaison. The informal complaint is that respondent has had sexual relations with complainant's estranged or former spouse. No more is alleged. It does appear, however, that the person complaining to the Board had just experienced a dissolution of his marriage and that this experience may have occurred while his wife was a companion of respondent who, while he did not handle the divorce, was a representative of the justice system that had just dealt with complainant. The Board con-

tends that Judge Agerter's liaison may have brought the judicial office into disrepute, in violation of Rule 4(a)(3), or have been an impropriety eroding public confidence in the integrity of the judiciary in violation of Canon 2 of the Code of Judicial Conduct. We cannot say that the Board was without authority in this instance to investigate the sexual misconduct allegation.

 Since the Board has jurisdiction to investigate both misconduct allegations, it follows that it has the authority to issue subpoenas to make the investigation effective. The same information that justifies the investigation suffices for issuance of the subpoena. No further evidentiary prerequisite is needed. The purpose of the preliminary investigation, it should be remembered, is only to ascertain if there is probable cause for issuance of a formal complaint.[6] The informal complaint may itself be something less than what would amount to probable cause. *Cf. Kohn v. State*, 336 N.W.2d 292 (Minn.1983). Even the baseless complaint—an occupational hazard of judges, unfortunately—may deserve inquiry, if only to vindicate the judge by its dismissal and to ensure public confidence in the judicial system. When the Board proceeds with a preliminary investigation, however, it proceeds not as a prosecutor to prove a case, but as an impartial investigator, sensitive to the rights of the judge, the complainant, and the public.

We hold that the Board on Judicial Standards did not exceed its authority by choosing in this instance to initiate a confidential, preliminary investigation of the allegations set out in the complainant's letter. We hold, therefore, that the subpoena served on Judge Agerter requiring him to appear before the Board was properly issued.

## II.

It remains to be determined if the subpoena, if enforced, will violate respondent's rights of privacy and freedom of association. As to inquiry into the alcohol problem, we conclude that the judge's rights would not be violated. As to the allegation of sexual misconduct, we believe, on this record, that the subpoena must be quashed.

 Our democratic society rightly prizes individual freedoms and resists prying by the state into the personal, private affairs of the individual. Thus the law recognizes a right of informational privacy, which has two aspects: the right not to divulge private information to the government and the right to prevent the government from disclosing private information. *See Whalen v. Roe*, 429 U.S. 589, 599 n. 24, 97 S.Ct. 869, 876 n. 24, 51 L.Ed.2d 64 (1977) (mandatory reporting of dispensation of narcotics did not constitute an invasion of any constitutionally protected right or liberty). At issue here is the state's right to compel respondent to disclose aspects of his private life. At the same time, an investigation into claims of judicial misconduct is a vital societal goal, "designed to protect the citizenry by insuring the integrity of the judicial system." *In re Gillard*, 271 N.W.2d 785, 812 (Minn.1978). Thus a protectable right of informational privacy depends on a balancing of the competing interests of the individual in keeping his or her intimate affairs private and the government's interest in knowing what those affairs are when public concerns are involved. *See Barry v. City of New York*, 712 F.2d 1554, 1559 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983).

Recently we stated that "[a] judge's conduct in his or her personal life adversely affects the administration of justice when it diminishes public respect for the judiciary"; and we went on to say, "[o]ur legal

---

**6.** The fact that an affidavit was filed controverting the allegation of an alcohol problem does not necessarily establish a lack of a reasonable basis for the Board to believe there might be a disciplinary violation and for the investigative

subpoena to issue. At this preliminary stage, the Board is only seeking to gather information, not weigh it. *Cf. Kohn v. State,* 336 N.W.2d 292, 296 (Minn.1983) (attorney general's investigation into affairs of a private corporation).

system can function only so long as the public, having confidence in the integrity of its judges, accepts and abides by judicial decisions." *Complaint Concerning Winton*, 350 N.W.2d 337, 340 (Minn.1984). Nonetheless, "public officials * * * are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." *Nixon v. Administrator of General Services*, 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977).

It is because of these foregoing considerations that the Board's preliminary investigation is designed to protect the judge's privacy. The Board rules mandate that the inquiry be discreet and confidential. Rule 6(c)(1). This affords a measure of protection to the judge who is under investigation from injury to reputation from exposure of unjustified complaints, and it also protects the confidentiality of complainants and witnesses. *Nicholson v. State Commission on Judicial Conduct*, 50 N.Y.2d 597, 612, 409 N.E.2d 818, 825, 431 N.Y.S.2d 340, 347 (1980). Here, if Judge Agerter had responded to the subpoena, he would have appeared at a closed session of the Board. The questioning would have had to be kept within the bounds of relevancy and the judge's testimony would have been kept confidential. If the inquiry disclosed "insufficient cause to proceed," the file would have been closed and that would have ended the matter. Rule 8(b). Only if sufficient cause were established and a "formal statement of charges" filed by the Board with its secretary would confidentiality cease. Rule 8(c)(1).

■ In other words, Judge Agerter's claim of privacy is not that his disclosures are revealed to the public at large but that his disclosures are made known to the Board on a confidential basis. This is a limited intrusion. It is an intrusion that attempts to be sensitive to the respondent's legitimate privacy interests while at the same time it is cognizant of the respondent's status as a public servant and the need to protect the integrity of the justice system. *Cf. Nixon v. Administrator of*

*General Services*, 433 U.S. at 465, 97 S.Ct. at 2801 (a retired president's privacy interest in his presidential documents, where personal and official matters are intermingled, must yield to the "limited intrusion" of a screening process to be conducted by government archivists).

■ In this context, we have no difficulty in holding that Judge Agerter's right of privacy does not protect him from appearing before the Board and answering questions about his drinking habits, and we so hold. No fundamental right of the individual is involved and the Board has made a sufficient showing of a state interest to obtain this information from the judge in a confidential setting. Indeed, it does not appear that respondent seriously contends otherwise because he voluntarily submitted an affidavit countering on the merits the allegation that he had an alcohol problem.

We do not think, however, that the Board has made a sufficient showing to justify requiring Judge Agerter to answer questions about his private sex life. Judge Agerter was told the Board had received a letter from complainant stating that the judge was having sexual relations with a woman who had been complainant's wife. The judge was not allowed to see the letter. No specific misconduct was alleged, but the Board did learn that the complainant and his wife had been divorced some 10 days before complainant's letter to the Board. The Board also learned that the divorce proceedings had not been in Judge Agerter's court and that the judge was not married. There was no claim nor any showing that the judge's alleged relationship with M.K. was a matter of public knowledge or concern. On these facts, Judge Agerter was served with a subpoena directing him to appear before the Board "concerning allegations of your having a sexual relationship with [M.K.] * * *."

One's private sex life concerns "the most intimate of human activities and relationships." *Carey v. Population Services International*, 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977). Even in the confidential setting of a Board hearing,

to be required to reveal intimacies of one's private sex life can be, at best, distasteful, and, at worst, humiliating, distressful and demeaning.

To intrude on respondent's right of privacy, the Board must show an important public interest. Concededly, the integrity of the judiciary is such an interest. If an informal complaint alleged a liaison conducted in such a public manner as to be of community concern or alleged an involvement in commercialized sex, we would have no difficulty in holding that a judge would be required to answer questions about that conduct, no matter how distressful the inquiry might be. But, as the trial court noted, that is not this case. Here, at best, we have only the speculative implication that respondent's sexual conduct might not be private and might be bringing the judicial office into disrepute. The Board's characterization of respondent's conduct as adultery or fornication, under statutes which police and prosecutors generally have considered unenforceable, does not make the implication any less speculative.

While the Board may draw an implication of a possible disciplinary violation from the complainant's letter so as to authorize an investigation, this implication is too tenuous to sustain the Board's burden of showing a state interest significant enough to require the judge himself to answer questions about his private sex life, at least at this stage of the investigation. If this were not so, a judge's right of privacy, while admittedly less pervasive than the private citizen's, might as well be nonexistent.

 To justify intrusion into Judge Agerter's right of privacy, we believe the Board must have before it, as a bare minimum, an allegation or some information of publicly known misconduct. This showing

is completely lacking. Perhaps the more prudent course here would have been for the judge to have cooperated with the Board's investigation, or at least to have appeared at the confidential Board hearing and there explained his position.[7] Judge Agerter has, however, chosen to stand on his right of privacy, and we hold that he may do so. We see no reason to discuss the claim of a right of freedom of association.

The writ of prohibition to quash the subpoena is denied on the allegation of an alcohol problem but is granted on the allegation of sexual misconduct.

The writ of prohibition is granted in part and denied in part.

TODD, J., took no part in the consideration or decision of this case.

PETERSON, Justice (concurring in part; dissenting in part).

The majority of the court denies the petition of the Board on Judicial Standards for a writ of prohibition preventing the district judge from quashing an investigatory subpoena compelling respondent judge to appear before the Board to answer questions about a citizen's complaint alleging that the judge had engaged in sexual misconduct with the complainant's now ex-wife under circumstances that may have constituted adultery. The somewhat ambivalent basis for the decision is twofold: (1) that the complaint is speculative and (2) that the subpoena impermissibly intrudes upon respondent's constitutional right of privacy. I respectfully dissent on both counts.

We do not know the full contents of the citizen's letter of complaint, for it is not a part of this record. We do, however, know the identity of the complainant and the identity of the man and woman of whom

---

**7.** If the parties had not initially proceeded in a confrontational manner, perhaps this appeal would not be here, for even the Board concedes Judge Agerter has a right of privacy. At the trial court's hearing, this exchange took place:

COURT: Suppose he [Judge Agerter] wants to sit there and think—This is a deeply confidential affair, private to me. There has been no

public scandal about it. The state board is now—. I don't want to tell a lie and I also don't see any reason why I should talk to a regulatory agency about a deeply private matter which involves another person and he just says, "no."

MR. RULFSRUD [Board Counsel]: I respect the judge's right to do that.

sexual misconduct is alleged, neither of whom is a stranger to the complainant. The complainant and the woman were married to each other until just 10 days before the letter of complaint. The majority opinion concedes "that the person complaining to the Board had just experienced a dissolution of his marriage and that this experience may have occurred while his wife was a companion of respondent." The majority opinion further acknowledges, "We cannot say that the Board was without authority in this instance to investigate the sexual misconduct allegation." If that is so, there seems no basis to deny the subpoena on the ground that the complaint is speculative.

The citizen's letter of complaint, whatever may be for us the unknown detail of its contents, cannot be expected to be a lawyer's model of clarity and detail. The important point is that the issue here involves only a preliminary investigation pursuant to the mandate of Rule 6(c)(1) that "[u]pon receipt of a complaint, report, or other information as to conduct that *might* constitute grounds for discipline, the executive secretary shall conduct a prompt, discreet, and confidential investigation and evaluation." The Board was compelled to resort to the issuance of a subpoena, pursuant to Rule 2(e)(1), only because respondent rejected the more informal procedure of making any statement to the executive secretary of the Board, not even a simple denial.

The essence of the court's decision, confirmed in its syllabus, is that the Board's inquiry into a possible adulterous relationship constitutes an impermissible intrusion into the judge's right of privacy. The court apparently treats this as a constitutional right of privacy for, in its statement of the four conditions for the enforcement of a subpoena, it rests decision upon the condition that it must be both "reasonable and does not violate constitutional rights." It further states, citing *Carey v. Population Services International,* 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977), "One's private sex life concerns 'the most intimate of human activities and relationships.'" If this court is itself undertaking to declare a judge's constitutional

right to engage in adultery, it has that power—but it cannot do so on the ground that it is compelled by any decision of the United States Supreme Court. *Carey* involved no more than extension to minors of the protection of a right to use contraceptives. The *Carey* court made clear, however, that "[t]he outer limits of this aspect of privacy has not been marked," *id.* at 684, 97 S.Ct. at 2016, and that "[t]he Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults." *Id.* at 689, n. 5, 97 S.Ct. at 2018 n. 5 (bracketed language in original). The United States Supreme Court has not extended the right to privacy beyond marital intimacy—the keystone of the seminal decision in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)—and procreative choice.

I dissent from the majority's opinion that a right to privacy protects respondent from responding to allegations that may constitute adultery. Adultery is not a victimless crime. Adultery does not involve purely private acts between two people; rather, it involves the invasion of an existing marital relationship of vital interest to a third person—the spouse of the participant in the adultery. The state has long had an interest in the stability and preservation of marriage and family. Statutes regulate the formation and dissolution of marriages. Numerous statutes, both state and federal, are designed to preserve the stability of the family including, for example, statutes protecting the marital relationship by creating spousal privilege that protects one spouse from having to testify against the other. Statutes proscribing adultery (Minn.Stat. § 609.36 (1982)) have been enacted to protect the marital and family relationship. It may be, as the majority opinion says, that police and prosecutors generally have considered such statutes unenforceable. Whether enforced or not, however, the statutes remain a statement of public policy of this state until they are repealed or declared unconstitutional. As this court so

recently stated in *Complaint Concerning Winton*, 350 N.W.2d 337, 340 (Minn.1984):

"The role of a judge in the administration of justice requires adherence to the highest standard of personal and official conduct. Of those to whom much is committed, much is demanded. A judge, therefore, has the responsibility of conforming to a higher standard of conduct than is expected of lawyers or other persons in society. Willful violations of law or other misconduct by a judge, whether or not directly related to judicial duties, brings the judicial office into disrepute and thereby prejudices the administration of justice."

To use the courts own words: "If the Board is to discharge properly its responsibilities of ensuring the integrity of the judicial system, it must have, we believe, broad powers and the discretion to exercise these powers even with respect to matters debatably involving judicial discipline."

The court in a concluding statement, apparently melding the concepts of speculativeness and privacy, states: "To justify intrusion into Judge Agerter's right of privacy, we believe the Board must have before it, as a bare minimum, an allegation or some information of publicly known misconduct. This showing is completely lacking." [1] We do not know the extent to which the misconduct may be publicly known, and to require a layperson to include such information in his complaint is unwarranted. It is not, at this stage, a basis for thwarting the required preliminary investigation. We do know that at least one person of the public, the complainant, asserts an awareness of misconduct. These proceedings, of course, have now most certainly made the misconduct a subject of widespread public knowledge. Even if that were not so, the court's decision prohibiting the confidential inquiry by subpoena leaves only the alternative of general public inquiry which, however discreet, may well enlarge the public awareness of the allegations.

Other than as reserved by this dissenting opinion, I concur in the opinion and the decision of the court approving enforcement of the investigative subpoena regarding respondent's alleged alcohol problems.

KELLEY, Justice (concurring in part; dissenting in part).

I join the dissent of Justice Peterson.

---

1. The court has, in one sentence without elaboration, surfaced what may be an important issue as to the necessary extent and effect of public awareness of judicial misconduct. How widespread must the public knowledge be, and how is it to be measured? Is the public reaction to be tested by a subjective standard regardless of how reasonable the public reaction? Or is the public reaction to be tested by an objective standard of what a reasonable public reaction should be? Any such questions, however, are more properly reserved for subsequent determination in the event the Board were to present to this court a recommendation for discipline.