STATE OF MINNESOTA

IN SUPREME COURT

A24-0107

Court of Appeals                                                    McKeig, J.
                                        Dissenting, Thissen, Hennesy, JJ.


State of Minnesota Office of the
Attorney General,

                                                        Filed:  January 7, 2026
                Appellant,

vs.

Madison Equities, Inc.,

                Respondent.

_____

Keith Ellison, Attorney General, Liz Kramer, Solicitor General, Peter J. Farrell, Deputy
Solicitor General, Jason Pleggenkuhle, Rebecca K. Webster, Assistant Attorneys General,
Saint Paul, Minnesota, for appellant.

Kelly S. Hadac, Hadac Law Office PLLC, Rosemount, Minnesota, for respondent.

_____

S Y L L A B U S

Litigation over a civil investigative demand tolls the limitations period in which the

Attorney General may exercise its authority under Minn. Stat. § 8.31 (2024) to commence

a civil enforcement action.

Reversed and remanded.

O P I N I O N

McKEIG, Justice.

We are asked to decide whether litigation over a civil investigative demand issued by the appellant State of Minnesota, Office of the Attorney General (Attorney General) tolls the statute of limitations period for a subsequent civil enforcement action brought by the Attorney General arising out of the investigation. The Attorney General issued a civil investigative demand (CID) pursuant to the Attorney General's authority under Minn. Stat. § 8.31 (2024) to investigate potential wage-theft by respondent Madison Equities, Inc. Madison Equities moved to quash the CID, which resulted in more than three years of litigation. After that litigation concluded, the Attorney General initiated a civil enforcement action, which included a claim alleging violations of the Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. §§ 177.21–.35 (2024). Madison Equities moved to dismiss the MFLSA claim under Minnesota Rule of Civil Procedure 12.02(e), asserting that the claim was untimely under the two-year statute of limitations for wage-theft claims. Minn. Stat. § 541.07(5) (2024). In response, the Attorney General asserted that the CID litigation tolled the applicable limitations period. Rejecting the Attorney General's tolling argument, the district court dismissed the MFLSA claim as barred by the statute of limitations. The court of appeals affirmed the district court's dismissal of the MFLSA claim.

We hold that the litigation over the CID tolled the applicable limitations period. Thus, the court of appeals erred by affirming the district court's dismissal. Our holding today applies narrowly to a situation where the Attorney General exercises authority

2

granted by the Legislature under Minnesota Statutes section 8.31 to investigate and enforce violations or suspected violations of statutes specifically mentioned in section 8.31, subdivision 1, or any other laws respecting unfair, discriminatory or other unlawful practices in business, commerce, or trade. Additionally, it is the *litigation* over the CID that tolls the limitations period—not simply the service of the CID that triggers tolling—and, for tolling to apply, the CID and subsequent litigation must concern the same alleged unlawful practice. Accordingly, we reverse the decision of the court of appeals affirming the dismissal of the MFLSA claim, and we remand to the district court to reinstate the MFLSA claim and for further proceedings.

**FACTS**

Madison Equities is a property management company that owns, manages, and leases residential and business properties, largely in downtown St. Paul.[1] It has established multiple closely held subsidiaries through which it holds its interests in each of its real estate properties. Madison Equities employs numerous hourly employees, including security guards for its properties.

In August 2019, current and former employees of Madison Equities began contacting the Attorney General to report wage theft and nonpayment of wages in violation

---

[1] This appeal arises from the district court's dismissal of the complaint for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). Thus, we accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party, the Attorney General. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 606 (Minn. 2014). We can also consider documents referenced or attached to the complaint. *State by Smart Growing Minneapolis v. City of Minneapolis*, 954 N.W.2d 584, 588 n.4 (Minn. 2021). The facts stated here are taken from the Attorney General's complaint filed June 5, 2023, and documents referenced in the complaint.

of Minnesota and federal overtime laws. The current and former employees, who worked as security guards for Madison Equities, alleged that Madison Equities had evaded overtime laws by paying them through its various subsidiaries, despite the employees working exclusively for Madison Equities. In total, six current and former employees contacted the Attorney General between August 2019 and November 2019 regarding alleged wage theft.

Under Minnesota Statutes section 8.31, subdivision 1, the Attorney General must "investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." We have referred to subdivision 1 of this statute as the Attorney General's "investigative mandate." *Madison Equities, Inc. v. Off. of Att'y Gen.* (*Madison Equities I*), 967 N.W.2d 667, 672–73 (Minn. 2021). Minnesota Statutes section 8.31, subdivision 2, is the "investigative tool" through which the Attorney General may accomplish its mandate. *Madison Equities I*, 967 N.W.2d at 672–73. The investigative tools available under subdivision 2 allow the Attorney General to "ascertain if there is any substance to the . . . complaints from the party who is perhaps in the best position to know, namely, the party against whom the complaint is made." *Kohn v. State ex rel. Humphrey*, 336 N.W.2d 292, 296 (Minn. 1983). The Attorney General attains the pre-suit discovery contemplated by subdivision 2 using a CID. *Madison Equities I*, 967 N.W.2d at 673. The Attorney General may only serve a CID if the Attorney General "has information providing a *reasonable ground* to believe that any person has violated, or is about to violate, any of the laws of this state referred to in subdivision 1." Minn. Stat. § 8.31, subd. 2 (emphasis added). "On *becoming satisfied*"—presumably through the

4

investigative tools available in subdivision 2—that any of the laws outlined in subdivision 1 "has been or is being violated, or is about to be violated," the Attorney General may "sue for and have injunctive relief" and recover a civil penalty from anyone who is found to have violated those laws. Minn. Stat. § 8.31, subd. 3 (emphasis added).

Shortly after receiving the first round of complaints, in October 2019, the Attorney General issued a CID to Madison Equities and nine subsidiaries associated with the seven properties where the security guards worked. The CID asserted that the Attorney General had reasonable grounds to believe that Madison Equities had failed to pay their workers—including but not limited to security guards—all wages required by state and federal law, including overtime wages.

Madison Equities filed a motion for a protective order in Ramsey County District Court seeking to quash the CID in its entirety, asserting that the CID was overly broad. The Attorney General filed a cross-motion to compel Madison Equities to comply with the CID. The proceedings surrounding that litigation are laid out in our decision in *Madison Equities I*, 967 N.W.2d at 671. The district court denied Madison Equities' motion for a protective order and granted the Attorney General's motion to compel in its entirety. *Id.* We largely affirmed the district court's order granting the motion to compel, holding that the Attorney General had reasonable grounds to investigate Madison Equities and 10 of its subsidiaries affiliated with properties where the complaining security guards worked. *Id.* at 674–75. But we held that the district court had abused its discretion by failing to make a finding of reasonable grounds to investigate as to the information the Attorney General sought regarding 30 other companies related to Madison Equities. *Id.* at 675. We also

5

limited the scope of the employee information sought by the Attorney General to hourly workers. *Id.* at 676.

Following our decision in *Madison Equities I*, the CID litigation returned to the district court. Madison Equities initially provided the Attorney General with some responsive documents. The district court ordered Madison Equities to provide additional information on its subsidiaries, and Madison Equities provided the last set of documents on July 20, 2022. The Attorney General identified deficiencies in Madison Equities' response and requested more information, but Madison Equities refused to provide additional responsive documents. The Attorney General ultimately asked the district court to enter judgment for the Attorney General on the CID litigation, which Madison Equities opposed. The district court entered judgment for the Attorney General on April 17, 2023.

The Attorney General commenced a civil enforcement action against Madison Equities on June 5, 2023. The complaint alleged that Madison Equities violated the MFLSA by failing to pay its employees overtime wages as required by Minn. Stat. § 177.25, until at least 2019.[2] The complaint alleged that "Madison Equities devised a

---

[2]    The complaint also alleged a whistleblower retaliation claim under Minn. Stat. § 181.932 (2022), but the only claim relevant here is the MFLSA claim. The district court dismissed the whistleblower retaliation claim for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). On appeal, the court of appeals reversed the dismissal of this claim and remanded to the district court for further proceedings. *Off. of Att'y Gen. v. Madison Equities, Inc.* (*Madison Equities II*), No. A24-0107, 2024 WL 4259298, at *8 (Minn. App. Sep. 23, 2024). Madison Equities did not seek further review of the court of appeals' reinstatement of the whistleblower retaliation claim and that claim is not before us.

scheme to systemically evade paying any overtime to its security guards" by paying the security guards through its subsidiaries instead of through Madison Equities.

Madison Equities moved to dismiss the MFLSA claim for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). Madison Equities argued that the claim is untimely under the two-year statute of limitations for wage-theft claims in Minn. Stat. § 541.07(5). In response, the Attorney General argued that the CID litigation had tolled the limitations period. The district court granted Madison Equities' motion and dismissed the MFLSA claim. The district court determined that the claim began to accrue at the latest in 2019 when Madison Equities employees came forward to the Attorney General. The district court therefore ruled that the claim was untimely under section 541.07(5) because the Attorney General commenced the action in 2023. The district court also concluded that the CID litigation did not toll the statute of limitations.

The court of appeals affirmed the dismissal of the MFLSA claim. *Off. of Att'y Gen. v. Madison Equities, Inc.* (*Madison Equities II*), No. A24-0107, 2024 WL 4259298, at *6 (Minn. App. Sep 23, 2024). The court of appeals rejected the Attorney General's tolling arguments, noting "valid policy reasons put forward by the [Attorney General] in favor of tolling," but citing "a lack of Minnesota caselaw that has applied tolling in this type of circumstance." *Id.* at *1.

We granted the Attorney General's petition for further review to address whether the limitations period applicable to the MFLSA claim was tolled during the pendency of the CID litigation.[3]

**ANALYSIS**

This case comes to us on appeal from the district court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). The district court determined that the Attorney General's MFLSA claim against Madison Equities is time-barred under the two-year statute of limitations in Minn. Stat. § 541.07(5) that applies to overtime wage-theft claims. We review de novo "whether a complaint has stated a claim sufficiently to survive a motion to dismiss." *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 325 (Minn. 2019). The question we must answer here is whether the court of appeals erred by affirming the district court's dismissal of the MFLSA claim as untimely on the ground that the CID litigation did not toll the statute of limitations. Whether a particular action tolls the applicable statute of limitations is a legal question that we review de novo. *Minn. Laborers Health & Welfare Fund v. Granite Re, Inc.*, 844

---

[3]      We also granted review on the Attorney General's alternative argument that Minn. Stat. § 541.05, subd. 1(2), should apply to its MFLSA claim as opposed to Minn. Stat. § 541.07(5). Section 541.05, subdivision 1(2), provides a six-year statute of limitations for actions "upon a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07." The Attorney General argued that, because the Attorney General sought "equitable and other forms of relief unique to section 8.31" and these forms of relief are "created" by section 8.31, then section 541.05, subdivision 1(2), should apply. Because we conclude that the court of appeals erred by affirming the dismissal of the MFLSA claim as untimely, we do not reach the issue of the applicability of the six-year limitations period in section 541.05, subdivision 1(2).

8

N.W.2d 509, 513 (Minn. 2014). Therefore, we review the district court's determination that the CID litigation did not toll the limitations period here de novo.

When a motion to dismiss is based on the running of a statute of limitations, we "look to the facts alleged in the complaint, accept those facts as true, and construe inferences from those facts in favor of the plaintiff." *Hansen*, 934 N.W.2d at 325. "An assertion that the statute of limitations bars a cause of action is an affirmative defense and 'the party asserting the defense has the burden of establishing each of the elements.' " *Id.* at 326 (quoting *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 716 (Minn. 2008)). The district court should dismiss a claim as untimely under Rule 12.02(e) "only when it is clear from the stated allegations in the complaint that the statute of limitations has run." *Id.* (noting that courts should "not make inferential leaps in favor of the defendant to conclude that a lawsuit is time-barred").[4]

---

[4] Madison Equities contends that the Attorney General "pleaded no facts which suggest it was somehow prevented from filing a timely lawsuit." To the contrary, a motion to dismiss based on the expiration of the limitations period should be granted only when it is clear from the factual allegations stated in the complaint that the limitations period has run. *Hansen*, 934 N.W.2d at 326. And as we recently explained in *Hoskin v. Krsnak*, 25 N.W.3d 398, 408–09 (Minn. 2025), it is not the plaintiff's burden to plead facts to rebut an affirmative defense in the complaint. Accordingly, it was not, as Madison Equities suggests, the Attorney General's burden to plead facts establishing that the applicable statute of limitations was tolled. *See, e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) (explaining that because a complaint "need not anticipate or overcome" an affirmative defense, "a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense").

Additionally, in reviewing a motion to dismiss, we construe all inferences from the facts in favor of the nonmovant and we will not make inferential leaps in favor of the movant to conclude that a particular claim is time-barred. *Hansen*, 934 N.W.2d at 325–26. The Attorney General's complaint states that it issued the CID to Madison Equities and nine of its subsidiaries in October 2019, within months of receiving complaints from the

A.

A statute of limitations is designed to limit the time within which a party may commence an action. *In re Individual 35W Bridge Litig.*, 806 N.W.2d 811, 815 (Minn. 2011); 54 C.J.S. *Limitations of Actions* § 1 (2025). "Statutes of limitations exist to provide a defendant with 'peace of mind'; they also 'recogniz[e] that after a certain period of time it is unfair to require the defendant to attempt to piece together' a defense to an old claim." *Abbott v. McNeff*, 171 F. Supp. 2d 935, 939 (D. Minn. 2001) (alteration in original) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)). Statutes of limitations also serve "to spare the courts from litigation of stale claims" and to protect defendants from having to defend themselves "after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Weavewood, Inc. v. S & P Home Inv., LLC*, 821 N.W.2d 576, 580 (Minn. 2012) (citation omitted) (internal quotation marks omitted).

We generally "have no power to extend or modify statutory limitations periods." *Sanchez v. State*, 816 N.W.2d 550, 564 (Minn. 2012). However, we have also recognized that we may toll the statute of limitations "unless the Legislature expressly provides otherwise."[5] *Id.* at 564 n.13; *see also Young v. United States*, 535 U.S. 43, 49 (2002) ("It

---

security guards, and three years of litigation over the CID ensued. Despite this litigation, Madison Equities would have us hold that nothing prevented the Attorney General from commencing the action as early as 2019. Based on the allegations in the complaint and the rule we announce today, we hold that the CID litigation tolled the limitations period in which the Attorney General was required to commence the civil action against Madison Equities.

[5] The dissent points out that the Legislature established the limitations period and, likewise, the Legislature could extend the limitations period if it were good policy to do

10

is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." (citations omitted) (internal quotation marks omitted)); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 681 (2014) ("Tolling . . . lengthens the time for commencing a civil action in appropriate circumstances . . . ."). Tolling stops the running of the statute of limitations. *Toll*, *Black's Law Dictionary* (12th ed. 2024). We have stressed, however, that the standard we apply to toll a statute of limitations "is necessarily a high one." *Sanchez*, 816 N.W.2d at 561.

We have held that the statute of limitations will not run against a plaintiff in a few exceptional circumstances. *See, e.g.*, *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975) (tolling for fraudulent concealment); *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 70–71 (Minn. 2020) (continuing violations doctrine). Most relevant to our decision today is *St. Paul, M. & M. Ry. Co. v. Olson*, 91 N.W. 294 (Minn. 1902). In *Olson*, we held that the period during which an adverse possessor's land claim was processing in the "land department of the United States" could not be counted against the plaintiff for purposes of adverse possession because the land department had exclusive jurisdiction over the land claim while it was processing. *Id.* at 296–97. We held that "[w]henever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitation has barred his right, even though the statute makes no specific

---

so. But the lack of a specific statutory provision that allows tolling for CID litigation or lengthens the limitations period for civil enforcement claims under section 8.31 does not hamstring us from applying tolling in this case.

exception in his favor in such cases."[6] *Id.* at 296. Had the plaintiff brought an action against the alleged adverse possessor during the pendency of the land department claim, the state court would have had to dismiss the claim for lack of jurisdiction. *Id.* at 296. Thus, essential to the claim of tolling in *Olson* was the plaintiff's inability to bring its claim earlier than the present action.

We next consider the Attorney General's special duties and authority under section 8.31 to inform our determination of whether tolling applies to the Attorney General's MFLSA claim against Madison Equities.

B.

Statutes of limitations for various types of actions are covered by Minnesota Statutes chapter 541. Under Minn. Stat. § 541.07(5), a two-year statute of limitations applies to actions involving "the recovery of wages or overtime or damages, fees, or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees, or penalties."[7] Madison Equities argues that the MFLSA claim is untimely

---

[6] Since *Olson*, we have only applied its reasoning to deny tolling claims. *See Holmgren v. Isaackson*, 116 N.W. 205, 206 (Minn. 1908) (holding that tolling did not apply because the plaintiff "had the legal right at all times to bring the pending action to trial and judgment" and "not only failed so to do, but [also] procured a dismissal of the action without any determination of her alleged rights"); *see also DeMars v. Robinson King Floors, Inc.*, 256 N.W.2d 501, 505 (Minn. 1977) (citing *Holmgren* for the proposition that the plaintiff's failure to seek relief on the merits in an earlier action would not toll the limitations period for the same claim subsequently filed).

[7] The limitations period is extended to three years if "the employer fails to submit payroll records by a specified date upon request of the Department of Labor and Industry or if the nonpayment is willful and not the result of mistake or inadvertence." Minn. Stat. § 541.07(5). Because, based on our holding that tolling applies, the Attorney General's

12

because the district court found the claim accrued in 2019 and the Attorney General did not commence the action until 2023. The Attorney General argues that the CID litigation tolled the limitations period for the MFLSA claim here,[8] either under a theory it refers to as "pendency tolling"[9] or under other tolling principles. The crux of both arguments is the Attorney General's assertion that he could not complete the investigation into alleged wage theft and determine whether to commence an action against Madison Equities without Madison Equities' cooperation with the CID. In discussing the applicability of tolling in this case, we address the Attorney General's special duties under section 8.31—specifically the Attorney General's authority to seek pre-suit discovery under subdivision 2 and the requirement that the Attorney General must "becom[e] satisfied" that the "law[] has been

---

MFLSA claim is timely under even a two-year limitations period, we express no opinion on whether the two- or three-year limitations period applies.

[8] The dissent contends that the Attorney General should have challenged the dismissal of the MFLSA claim based on when the claim accrued instead of whether the CID litigation tolled the statute of limitations. The district court concluded that the Attorney General's "cause of action against Madison [Equities] accrued in late 2019 at the latest." "A cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011). The Attorney General does not challenge the district court's conclusion that the cause of action accrued when the current and former employees of Madison Equities came forward in the fall of 2019. Instead, the Attorney General argues that the CID litigation tolled the applicable limitations period. We take no position on when the MFLSA claim accrued here because the Attorney General did not make that argument.

[9] Though we have made statements suggesting that a pending legal action may toll the statute of limitations, we do not believe, as the Attorney General suggests, that "pendency tolling" is "well-established" in Minnesota. Because our decision is limited to the circumstances presented in this case, we decline to address the potential application of pendency tolling more broadly.

or is being violated, or is about to be violated" before commencing a civil enforcement action under subdivision 3.

We first consider the investigative tools available to the Attorney General under section 8.31, subdivision 2.[10] The Attorney General's pre-complaint investigative

---

[10] Minnesota statutes section 8.31, subdivision 2, reads as follows:

When the attorney general has information providing a reasonable ground to believe that any person has violated, or is about to violate, any of the laws of this state referred to in subdivision 1, the attorney general shall have power to investigate those violations, or suspected violations, and to take such steps as are necessary to cause the arrest and prosecution of all persons violating any of the statutes specifically mentioned in subdivision 1 or any other laws respecting unfair, discriminatory, or other unlawful practices in business, commerce, or trade. In connection with investigation under this section the attorney general upon specifying the nature of the violation or suspected violation may obtain discovery from any person regarding any matter, fact or circumstance, not privileged, which is relevant to the subject matter involved in the pending investigation, in accordance with the provisions of this subdivision. The discovery may be obtained without commencement of a civil action and without leave of court, except as expressly required by the provisions of subdivision 2a. The applicable protective provisions of rules 26.02, 26.03, and 30.04 of the Rules of Civil Procedure for the district courts shall apply to any discovery procedures instituted pursuant to this section. The attorney general or any person to whom discovery is directed may apply to and obtain leave of the district court in order to reduce or extend the time requirements of this subdivision, and upon a showing of good cause the district court shall order such a reduction or extension. In order to obtain discovery, the attorney general may:

(a) Serve written interrogatories on any person. Within 20 days after service of interrogatories, separate written answers and objections to each interrogatory shall be mailed to the attorney general.
(b) Upon reasonable written notice of no less than 15 days, require any person to produce for inspection and copying any documents, papers, books, accounts, letters, photographs, objects, or tangible things which are in the possession, custody, or control of that person.

procedure "is often the best and fairest manner in which to proceed." *Kohn*, 336 N.W.2d at 296 (discussing the purpose of subdivision 2). To initiate an investigation, the Attorney General must "ha[ve] information providing a reasonable ground" to serve as the basis of the investigation. Minn. Stat. § 8.31, subd. 2. According to the Attorney General, before at least February 14, 2022, when Madison Equities provided the Attorney General with the first responsive documents following the parties' CID litigation, the Attorney General had little or no more than the reports of the Madison Equities employees who came forward complaining of wage theft. If the Attorney General were required to commence an action based on the word of the employees alone, then the investigative procedures available to the Attorney General under section 8.31, subdivision 2—which authorizes discovery "without commencement of a civil action and without leave of court"—would often be futile. Whenever there is litigation over a CID and the Attorney General is faced with the running of the statute of limitations, the Attorney General would have to determine whether the Attorney General can or should proceed with a civil enforcement action without any response to its investigation. We agree with the Attorney General that declining to apply tolling to this case would contravene the purpose of the subdivision 2.

Moreover, requiring the Attorney General to commence an action based on public complaints alone and without the opportunity for appropriate investigation would likely

---

(c) Upon reasonable written notice of no less than 15 days, take the testimony of any person by deposition as to any fact or opinion relevant to the subject matter involved in the pending investigation.

For the purposes of this subdivision the term "person" has the meaning specified in section 325F.68.

15

create costly outcomes in some situations.[11] Investigation targets would be incentivized to litigate a CID for as long as possible so that the limitations period on the underlying claim will have run by the time the Attorney General receives any response to the CID.[12] And, on the opposing side, the Attorney General would have to commence a civil action against any investigation target who litigates the CID if there is any risk that the statute of limitations will run before the investigation is completed. That is not only inefficient, but also more harmful to the targets of an investigation by requiring them to defend an action that could have been resolved before the commencement of enforcement litigation. *See Minneapolis Star & Trib. Co. v. Schumacher*, 392 N.W.2d 197, 205 (Minn. 1986) ("This court has often stated that it favors the settlement of disputed claims without litigation.").

Now we turn to section 8.31, subdivision 3, regarding when the Attorney General may bring a civil enforcement action. Subdivision 3 provides that "[o]n becoming satisfied that any of those laws [identified in section 8.31, subdivision 1] has been or is being

---

[11] We do not suggest, as the dissent asserts we do, that the Attorney General should never commence a civil action based solely on public complaints without completing an investigation. The Attorney General has discretion to pursue certain remedies upon "becoming satisfied" that the law has been violated in a particular case. Minn. Stat. § 8.31, subd. 3. In some instances, public complaints may be sufficient to "satisf[y]" the Attorney General under subdivision 3. But the Attorney General has maintained in the present case that the Attorney General did not "becom[e] satisfied" as required by subdivision 3 until receiving documents responsive to the CID from Madison Equities, and hence the public complaints were not enough on their own in this case.

[12] As the dissent points out, there are also good faith reasons for investigation targets to challenge a CID, and they are entitled to pursue those challenges. A target should be incentivized to challenge a CID based on the merits of the challenge, not on the ability to delay until the limitations period on the underlying claim runs. Tolling removes the latter.

16

violated, or is about to be violated, the attorney general shall be entitled, on behalf of the state . . . to sue for . . . injunctive relief . . . and . . . and a civil penalty." The Attorney General asserts that Madison Equities' years-long challenge to the CID prevented the Attorney General from "becoming satisfied" that Madison Equities had violated the law under subdivision 3 and thus bringing a timely civil enforcement action.[13] And under the plain terms of section 8.31, subdivision 3, the Attorney General must "becom[e] satisfied" that the law "has been or is being violated, or is about to be violated" in order to commence a civil enforcement action.[14] Here, despite being served with the CID on October 7, 2019,

---

[13] Madison Equities asserts that the Attorney General had all the information the Attorney General needed to file the MFLSA claim back in 2019. The dissent goes a step further, stating that, by not challenging the district court's determination on accrual, the Attorney General conceded that the Attorney General had sufficient information to bring the MFLSA claim in the fall of 2019 under the "becom[e] satisfied" standard set forth in section 8.31, subdivision 3. To the contrary, the Attorney General has consistently argued that the Attorney General was not entitled to commence an action until "becoming satisfied," *see* Minn. Stat. § 8.31, subd. 3, that Madison Equities violated the MFLSA, and that the Attorney General did not become satisfied until after the CID litigation concluded. The Attorney General argued to the court of appeals that the district court drew improper inferences against the Attorney General when considering the motion to dismiss by concluding that the State specifically "knew how the [MFLSA] violations [had] occurred" back in 2019. The Attorney General argued to our court that, without any information from Madison Equities, the Attorney General could not "fulfill his duty to 'becom[e] satisfied' that the wage-theft laws had been violated before filing suit." It is inaccurate to say that the Attorney General admits that the Attorney General could have filed the MFLSA claim in 2019 when the Attorney General has always maintained the opposite.

[14] The dissent is critical that we are interpreting section 8.31, subdivision 3, as requiring that the Attorney General must "becom[e] satisfied" before bringing a civil enforcement action despite the Attorney General failing to request that we apply that standard. However, "[w]e are not bound by the arguments made by the parties." *State v. Beganovic*, 991 N.W.2d 638, 644 n.2 (Minn. 2023). Instead, we must decide cases in accordance with the law, a duty that "is not to be diluted by counsel's . . . failure . . . to cite relevant authorities." *Hoskin*, 25 N.W.3d at 404 n.3 (citation omitted) (internal quotation marks omitted).

17

Madison Equities produced no responsive documents until February 2022, nearly two-and-a-half years later. And Madison Equities did not submit its last set of responsive documents until July 2022. Because Madison Equities challenged the CID and failed to provide responsive documents for over two years, the Attorney General asserts that "the Attorney General could not complete his investigation—and determine whether he should exercise the legal remedy of a civil enforcement action." Although the dissent suggests that the Attorney General only now "[u]rg[es] us to rescue its case from dismissal," during the CID litigation the Attorney General raised concerns about Madison Equities' lack of response to the CID and requested a court ruling tolling the statute of limitations, but there is no indication that any court ever ruled on the Attorney General's request for tolling. *See Madison Equities I*, 967 N.W.2d at 676 n.12 (denying the Attorney General's "motion for security, without prejudice, to further proceedings in the district court on equitable tolling").

C.

Considering both the caution we have generally exercised when examining tolling claims and the Attorney General's special duties and authority under section 8.31, we now turn to whether tolling applies to the Attorney General's MFLSA claim against Madison Equities.

The Attorney General here faced a situation similar to the plaintiff in *Olson*. In *Olson*, the plaintiff could not file his claim within the limitations period because the defendant compelled the plaintiff to litigate ownership of the land in the U.S. land department for 11 years, during which time the department had sole jurisdiction over the

18

claim. 91 N.W. at 296–97. Madison Equities, however, argues that tolling should not apply to the MFLSA claim because the CID litigation was not an opportunity for either party to seek full relief on the merits and the district court would have had jurisdiction to hear and decide the MFLSA claim earlier than the date of filing. We agree with the dissent that this case is not identical to *Olson*, and it does not control our decision, but *Olson* is helpful to the extent it shows how we have crafted similar rules of tolling in the past. The Attorney General argues that receiving a response to the CID was the only opportunity for the Attorney General to "becom[e] satisfied" that the law had been violated such that the Attorney General could move forward with a civil action pursuant to section 8.31, subdivision 3. Because Madison Equities chose to litigate the CID and did not provide any response for nearly three years, the Attorney General could not proceed with the MFLSA claim during the CID litigation based on the standard set forth in section 8.31, subdivision 3—like the plaintiff in *Olson* who could not bring a claim in state court while the defendant litigated his claim in a different tribunal.

We also see similarities between the Attorney General's predicament and tolling for fraudulent concealment. We have held that the statute of limitations does not run during a period in which the defendant fraudulently conceals from the plaintiff information constituting the cause of action. *Granite Re*, 844 N.W.2d at 514. To be clear, there is no allegation that Madison Equities committed fraud in contesting the CID. But its litigation over the CID may have prevented the Attorney General from uncovering information that would have allowed it to sooner file the MFLSA claim. In a typical civil action, the plaintiff commences the suit and later conducts discovery seeking support for that claim.

19

But here, where the Legislature has empowered the Attorney General to conduct discovery before filing a claim, Madison Equities' litigation over the CID prevented the Attorney General from learning all the facts necessary to commence the civil enforcement action.

Lastly, we look to the different standards set forth for initiating an investigation under subdivision 2 ("reasonable ground," Minn. Stat. § 8.31, subd. 2) versus commencing a civil enforcement action under subdivision 3 ("becom[e] satisfied," Minn. Stat. § 8.31, subd. 3). Subdivisions 2 and 3 are distinct stages of the Attorney General's mandate to investigate potential violations of certain laws and subsequently commence a civil enforcement action against persons or entities who violate those laws. Holding that the Attorney General must commence a civil enforcement action without the benefit of an investigation under subdivision 2 would blur any line between the two standards set forth in subdivisions 2 and 3.[15] "[W]hen different words are used in the same context, we assume that the words have different meanings." *Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013). Although we do not interpret the meaning of either phrase,[16] we recognize that there must be some meaningful difference between the two. Holding that tolling does not

---

[15] We note that in *Madison Equities I*, Madison Equities argued that the security guards' complaints did not provide the Attorney General even with reasonable grounds to investigate the alleged wage theft violations under section 8.31, subdivision 2. 967 N.W.2d at 673. Now, however, Madison Equities would have us hold that the Attorney General should have filed an action based on precisely these same complaints.

[16] The dissent is critical that we are not defining "becoming satisfied" in section 8.31, subdivision 3. We have never defined the "becoming satisfied" in this context, we did not receive briefing from the parties on the phrase's definition, and we need not define the phrase to reach a conclusion here. Therefore, we decline to define "becoming satisfied" in in section 8.31, subdivision 3.

20

apply in this case would mean that, whenever there is a risk the statute of limitations will run because of litigation over a CID, the Attorney General must "becom[e] satisfied" on the same information providing a "reasonable ground" to believe that there has been or is about to be a violation of the law. Minn. Stat. § 8.31, subds. 3, 2.

Within the context of the Attorney General's special duties and authority under section 8.31 and the circumstances of this case where the Attorney General has continually argued that the Attorney General could not file a civil enforcement action against Madison Equities without any documents responsive to its CID, we hold that this is one of the exceptional circumstances that justifies the application of equitable tolling. To hold otherwise would run counter to the Attorney General's special duties and authority under section 8.31.[17]

Additionally, our holding is consistent with the purpose of statutes of limitations: to avoid undue surprises by ensuring that defendants are aware of the claims against them in reasonable time frames and to avoid evidence getting stale. *See Abbott*, 171 F. Supp. 2d at 939. Here, tolling applies only when the subject matter of the CID and the subsequent enforcement action are the same. A target becomes aware of the Attorney General's concerns upon receiving the CID. Accordingly, there is no risk of a defendant being surprised by an enforcement action related to the CID years later. Because the target is aware that they are under investigation, they are also aware that they have preservation

---

[17] The dissent argues that we are creating a special rule for just one litigant: the Attorney General as Attorney General. We are doing so because the Attorney General is unlike any other litigant because of the Attorney General's unique role and authority under section 8.31.

obligations. Once the Attorney General serves a CID, the target knows or has reason to know that litigation is reasonably foreseeable. *See Miller v. Lankow*, 801 N.W.2d 120, 127–28 (Minn. 2011) ("The duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable." (footnote omitted)). Accordingly, the risk of evidence being lost is reduced.

*     *     *

We emphasize that our holding today is narrow. It is the *litigation* over the CID that tolls the limitations period in which the Attorney General must file a complaint against the investigation target. Tolling begins when the litigation commences and ends when the target complies with the CID by providing the evidence sought. The serving of a CID, without more, will not toll the limitations period for the claim being investigated. We are wary of the concern that the Attorney General could use tolling as a sword rather than a shield—continually filing CIDs to toll the limitations period on any given claim. Our decision considers both the Attorney General's authority under section 8.31 and the legitimate interest in preventing government overreach by concluding that equitable tolling applies during CID litigation, while also restricting the Attorney General from controlling whether tolling will apply in any particular future case.

We therefore conclude that the limitations period here was tolled from the time Madison Equities first moved for a protective order until it produced the last set of documents responsive to the CID on July 20, 2022. After Madison Equities provided the last set of documents on July 20, 2022, there was no further litigation over the CID at the

22

district court except the Attorney General's request for entry of judgment. The Attorney General maintains that, as of July 20, 2022, it had acquired all the documents it would subsequently rely on to file the wage theft complaint. The rule we announce in this case is specific to CID litigation arising under the Attorney General's special investigative authority under section 8.31, subdivision 2. We thereby hold that the court of appeals erred by affirming the dismissal of the MFLSA claim as untimely under Minn. R. Civ. P. 12.02(e). We remand to the district court to reinstate the MFLSA claim and for further proceedings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

DISSENT

THISSEN, Justice (dissenting).

Today, the court creates a special tolling rule that modifies and extends a statutory limitations period enacted by the Legislature; a tolling rule which applies only to appellant, the Minnesota Attorney General, and only to claims—but, importantly, to *all* claims—brought by the Attorney General under Minnesota Statutes section 8.31 (2024).[1] In *Weston v. Jones*, 199 N.W. 431, 433 (Minn. 1924), we stated that we generally have "no power to extend or modify periods of limitation" prescribed by the Legislature. We only do so in exceptional cases. *Sanchez v. State*, 816 N.W.2d 550, 561 (Minn. 2012) (refusing to equitably toll the statute of limitations set forth in Minn. Stat. § 590.01 (2010)). I cannot discern any exceptional circumstances justifying the conclusion that the Attorney General should not have to play by the same rules as every other Minnesota litigant subject to statutes of limitation. Indeed, the Attorney General has had the civil investigative demand power set forth in Minnesota Statutes section 8.31, subdivision 2, for over 50 years,[2] and a request that we equitably toll the statute of limitations on a civil enforcement action under

---

[1]     In this case, the court is allowing an enforcement action for unpaid overtime to proceed despite the fact that the two- or three-year limitations period for such claims set forth in Minnesota Statutes section 541.07(5) (2024) has run. But the court's decision is not limited to wage theft claims. It applies to every type of "violation[] of . . . law . . . respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade" that forms the basis for an enforcement claim that the Attorney General may bring under section 8.31, subdivision 3. Minn. Stat. § 8.31, subd. 1 (defining the violations of law that are subject to section 8.31).

[2]     Act of Apr. 11, 1974, ch. 524, § 3, 1974 Minn. Laws 1307, 1308 (codified as amended at Minn. Stat. § 8.31, subd. 2 (2024)).

section 8.31, subdivision 3, based on litigation over the scope of a civil investigative demand has never been necessary—or at least such a necessity has never reached this court—until now. From where I stand, it appears the court is manufacturing a new tolling rule because the Attorney General missed a limitations period deadline in a single case. Therefore, in accord with the decisions of the district court and the court of appeals, I dissent.

I start the analysis that follows with a simple and critical point. The district court concluded—and neither party contests on appeal—that the Attorney General's cause of action against Madison Equities in this case accrued by late 2019; in other words, the Attorney General had sufficient information to initiate a civil enforcement action before the limitations period ran. Next, I conclude (as does the court) that this case does not fit within any of the narrow and exceptional categories where we have recognized equitable tolling should apply. I then turn to the question of whether we should create a new equitable tolling rule for section 8.31 civil enforcement actions brought by the Attorney General. In my view, the answer to that question is "No." The fundamental rationale the court offers—that the Attorney General did not have enough information to even initiate a civil enforcement action in this case—is contrary to the complaint and the district court's uncontested determination. Moreover, the court's position will make it *more* difficult in future cases for the Attorney General to bring civil enforcement actions to protect the rights of Minnesota consumers and workers. Finally, I discuss the court's adoption of a new standard for civil enforcement cases under section 8.31, subdivision 3—the Attorney General cannot bring a civil enforcement action unless it meets a higher, more demanding

"becom[es] satisfied" test. The Attorney General did not ask for—and expressly disavowed—adopting a new standard in this case. And the court fails to explain how judges and litigants will know when the Attorney General has "becom[e] satisfied." Minn. Stat. § 8.31, subd. 3. This approach by the court also deeply concerns me.

A.

A single critical point is decisive in this case: The district court concluded that the Attorney General's claim accrued in the fall of 2019 at the time he received complaints of unpaid overtime from several employees of respondent Madison Equities, Inc. The district court's determination is based on the allegations in the complaint. In paragraphs 19–27 and 30–32 of the complaint, the Attorney General sets forth facts six employees of Madison Equities provided the Attorney General's Office in the fall of 2019. For example, the complaint describes in detail Madison Equities engaging in wage theft, including:

- A whistleblower contacted the Attorney General's Office on August 7, 2019. He stated that he worked for Madison Equities as a security guard. This whistleblower applied to work solely at Madison Equities and, upon being hired, reported to a single supervisor. The whistleblower reported that after he reached the threshold of 40 hours working for Madison Equities at the First National Bank Building, he continued to work for Madison Equities at different properties and received paychecks from multiple entities. He provided the Attorney General's Office with an employee notice, paychecks, and paystubs that he received from different Madison Equities entities for work he performed as a security guard. He stated that he had not received large amounts of overtime premiums that he was owed under Minnesota and federal overtime laws.

- A second whistleblower, a current Madison Equities employee who also performed security guard work, contacted the Attorney General's Office on August 26, 2019. The second whistleblower was paid by Madison Equities and other entities. He reported that the companies that paid him did not always correspond to where he worked. The second whistleblower echoed the first whistleblower's allegations and provided

the Attorney General with paystubs. The second whistleblower stated that he feared retaliation by Madison Equities if it discovered that he had spoken to the Attorney General.

- On October 1, 2019, a third whistleblower contacted the Attorney General's Office. The third whistleblower also worked for Madison Equities as a security guard at two different locations. He reported that he applied to work solely, and only filled out employment documents, for Madison Equities. He also said he always reported to a single supervisor, who instructed him not to report more than 40 hours on his timesheet. The third whistleblower reported that he worked 50–60 hours per week but received two separate paychecks and did not receive overtime premiums. The third whistleblower also feared retaliation from Madison Equities.

- On October 21, 2019, a fourth whistleblower contacted the Attorney General's Office. The fourth whistleblower stated that he was a current Madison Equities employee and performed security guard work at multiple locations Madison Equities controlled. The fourth whistleblower reported that he did not receive overtime wages because he was paid by multiple different companies for the security guard work he performed for Madison Equities. He reported that the same person signed all his paychecks. The fourth whistleblower told the Attorney General that his supervisor described working more than 40 hours as a benefit, as he would gain additional working hours without applying for a different job. The supervisor also told this employee that he would not receive overtime for the additional work.

- On November 6, 2019, a fifth whistleblower reported to the Attorney General's Office that he was a former Madison Equities employee who had worked at the First National Bank Building for approximately 80 hours per week, but that he was paid by two different companies and did not receive overtime wages.

- On November 26, 2019, a sixth whistleblower, a current Madison Equities employee, told the Attorney General's Office that she worked for Alliance Center, but sometimes picked up extra shifts and was paid by Madison Equities. The sixth whistleblower reported that she wore the same uniform and received the same rate of pay regardless of which entity paid her for her Madison Equities security guard work. The sixth whistleblower also identified a single person as her supervisor. All six whistleblowers identified the same person as their supervisor.

D-4

The Attorney General did not appeal the district court's determination that his civil enforcement claim against Madison Equities accrued in the fall of 2019.[3] And the necessary implication of the determination that the wage theft claim accrued in the fall of 2019 is that operative facts supporting each element of the claim existed in the fall of 2019. In other words, in the fall of 2019 the Attorney General had enough evidence of Madison Equities' alleged wrongdoing to initiate a lawsuit for wage theft under section 8.31, survive a motion to dismiss, and seek additional information through the ordinary civil litigation discovery process. *See Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019).

Under the statute of limitations the Legislature has imposed, claims seeking to recover wages, overtime, or damages, fees, or penalties accruing under wage or overtime laws, must be brought within two years or, when specific circumstances exist, three years. Minn. Stat. § 541.07(5) (2024). Based on the undisputed determination that the claim accrued in the fall of 2019—more than three years before the Attorney General's complaint was filed in June 2023—this case would generally be easily resolved and readily dismissed for having been filed after the statute of limitations had run. Urging us to rescue its case from dismissal, the Attorney General argues that we should apply tolling principles to modify and extend the Legislature's limitations period. We should not do so.

---

[3] Not only did the Attorney General not challenge the district court's determination that the claim accrued in the fall of 2019 in his brief before the court of appeals, but the Attorney General did not ask us to review the district court's accrual determination in his petition for review. And at oral argument, the Attorney General conceded that he was not challenging the district court's accrual determination.

I want to be clear about why the uncontested determination that the claim here accrued in the fall of 2019—i.e., that sufficient facts existed in the fall of 2019 for the Attorney General to initiate a civil enforcement action for wage theft—is important to resolving this case. The sole justification the court offers for adopting a never-before-recognized tolling rule is a presumption that the Attorney General could not have brought this case in 2019, 2020, 2021, or 2022. That presumption is simply not true under the procedural posture of this case. In other words, the entire rationale for taking the exceptional step of adopting a judge-made rule that overrides a statutory limitations period is the Attorney General's assertion (measured against no standard other than the Attorney General's subjective view, as I will discuss below) that he was unable to bring an action by the fall of 2021 (or 2022 if the three-year limitation period applies)—a factual assertion which the district court's conclusion on accrual directly contradicts.[4]

---

[4] The court asserts that it is impermissible to draw an inference that sufficient evidence existed in the fall of 2019 to bring a claim that would survive a motion to dismiss on limitations grounds because the Attorney General bears no responsibility to allege facts in its pleadings that the limitations period should be tolled and Madison Equities bears the burden to establish the defense that the statute of limitations has run. That is true in many cases. But those principles of law do not govern in this case because the Attorney General *did* allege facts that establish the limitations period has run. We have stated that a defendant *can* prevail on a motion to dismiss under Minn. R. Civ. P. 12.02(e) based on the statute of limitations running "where the factual allegations asserted on the face of the complaint demonstrate that the complaint was filed too late." *Hansen*, 934 N.W.2d at 326 n.3 (citing *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832–33 (Minn. 2011)). This case differs from *Hoskin v. Krsnak*, 25 N.W.3d 398 (Minn. 2025), in that regard. In *Hoskin*, we held that a plaintiff need not anticipate and rebut an affirmative defense. *Id.* at 408–09. But we did not overrule our prior cases holding that a defendant could prevail on a Rule 12.02(e) motion to dismiss based on an affirmative defense where the plaintiff included allegations that established the elements of the affirmative defense. *Hoskin*, 25 N.W.3d at 409. As set forth above, the complaint here included allegations showing

As I discuss in Part D below, the court attempts to sidestep the fact that the Attorney General had sufficient information, under accepted pleading standards, in the fall of 2019 to bring a civil enforcement action that would survive a motion to dismiss by making *additional* new law (beyond the creation of an Attorney General-specific tolling rule). The court for the first time recognizes a special rule of accrual for civil enforcement actions brought by the Attorney General under section 8.31, subdivision 3. Critical to its decision establishing a new tolling rule, the court also holds that the Attorney General need not bring a claim until he "becom[es] satisfied" that a claim exists. Minn. Stat. § 8.31, subd. 3. And, notably, the court does so notwithstanding that the Attorney General *did not ask for a new accrual rule* in the district court or the court of appeals and *expressly disavowed at oral argument* that he is seeking this new looser standard of pleading based on the "becoming satisfied" language in section 8.31, subdivision 3. To justify its decision, the court is creating law that no party in this case—including the Attorney General—asked for. And although the court assiduously avoids explaining how one knows when the Attorney General "becom[es] satisfied," *infra* Part D, the analysis shows that this is a more rigorous standard than the general motion to dismiss standard in our notice pleading state. *See Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 811 (Minn. 2004) (explaining that a claim survives a motion to dismiss when the allegations, if taken as true, state a claim

that it was filed too late under our ordinary accrual and motion to dismiss standards. I am not drawing any impermissible inferences in concluding that the Attorney General's complaint was untimely. I am merely relying on the facts the Attorney General alleged in his complaint.

that is legally cognizable under the applicable law). That decision carries with it serious implications for future civil enforcement cases, as I discuss below.

B.

As the court acknowledges, this case does not fit within the exceptional and narrow categories of cases where we have traditionally applied equitable tolling principles. First, the Attorney General relies on a unique form of limitations period tolling he calls "pendency tolling." According to the Attorney General, pendency tolling is a broad rule that tolls the running of the statute of limitations on a cause of action while other related legal proceedings are pending if those other proceedings prevent enforcement of the remedy by legal action.

I agree with the court that the rule is much narrower than the Attorney General urges and it does not apply here under our precedent. For instance, *St. Paul, Minneapolis & Manitoba Railway Co. v. Olson*, 91 N.W. 294 (Minn. 1902), involved a railroad's action seeking to eject Olson from a piece of real property. Olson claimed sufficient time had passed such that he had gained ownership of the property by adverse possession. *Id.* at 295. We disagreed, holding that the adverse possession period was tolled during the pendency of federal proceedings Olson had brought seeking a determination that he owned the land. *Id.* at 297. We reasoned that the time during which Olson's federal case was pending could not be counted against the railroad because the state court lacked the power to determine ownership over the property:

> Whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitation has

barred his right, even though the statute makes no specific exception in his favor in such cases.

*Id.* at 296; *see also* Calvin W. Corman, 2 *Limitations of Actions* 10, § 8.4.1 (1991) (describing pendency tolling as a rule in which "[t]he plaintiff is not usually subject to the running of the applicable limitations statute while his or her case is subject to mandatory administrative review"). The rule we adopted in *Olson* is not a broad and loose principle that tolling may occur whenever a plaintiff claims it was unable to bring its claim earlier than it did. *Olson* is about the district court's lack of power to *hear* a claim at all.

*Holmgren v. Isaackson*, 116 N.W. 205 (Minn. 1908), is another adverse possession case. In that case, Holmgren claimed ownership of property Isaackson possessed. *Id.* at 206. The two parties litigated ownership for 16 years without resolution. *Id.* After the litigation ended, Isaackson claimed ownership by adverse possession, and we agreed. *Id.* We reasoned that the pendency tolling rule *did not* toll the adverse possession period because no paramount authority prevented Holmgren from exercising her legal remedy in the ordinary course to assert her possession of the property. *Id.*;[5] *see also Knipple v. Lipke*,

---

[5]  In *Holmgren*, we also determined that a separate tolling rule did not apply. 116 N.W. at 206. That rule was set forth in H.G. Wood, 2 *A Treatise on the Limitation of Actions at Law and in Equity* 697, § 272 (1893), and specifically related to ejectment actions that turn on the legitimacy of a claim of adverse possession. The rule provides:

> Effect of bringing Ejectment. — Although the adverse possession of a defendant in ejectment cannot, during the pendency of the suit, ripen into an absolute title under the operation of the statute of limitations, yet the effect of the statute is neutralized only in respect to the particular suit and the plaintiff therein. And after the termination of that suit, the statutory limitation having meanwhile expired, no subsequent action can be brought, either at law or in equity, to question that title or possession; and if the

300 N.W. 620, 623–24 (Minn. 1941) (holding that stockholders' objections to a corporate receiver's decision to apply for a stock assessment, which were filed and resolved in court, did not toll the statute of limitations under the pendency tolling theory).

In this case, there is no dispute that the district court would have had jurisdiction and power to hear the civil enforcement action had the Attorney General filed the case any time before the fall of 2021 (or, at the latest, before the fall of 2022). *See Olson*, 91 N.W. at 296 (recognizing tolling when "a person is prevented from exercising his legal remedy by some paramount authority"). More specifically, nothing about the Attorney General's ongoing civil investigation would have deprived the district court of jurisdiction to hear

---

plaintiff fails therein, the period during which the action was pending is not deducted from the period requisite to gain a title by possession.

*Id.* at § 272.

We later cited the rule in a workers' compensation case, *DeMars v. Robinson King Floors, Inc.*, 256 N.W.2d 501, 505 (Minn. 1977). In that case, we considered whether an employee's claim under the Workers' Compensation Act was properly dismissed because it was filed more than two years after the employee filed a first report of injury. *Id.* at 505 (citing Minn. Stat. § 176.151(1) (1971)). The employee had filed a previous claim for the same injury, failed to prosecute the case because he could not find a doctor to testify that the injury was work related, and ultimately dismissed it. *Id.* at 503. He petitioned to reinstate the claim well after the two-year period had run, when he found a doctor who would testify the injury was work related. *Id*. We essentially decided the unremarkable principle that commencing a workers' compensation claim within two years is timely, but if it is dismissed without resolution, reinstituting the claim outside the limitations period is time barred. *Id.* at 505.

This case does not fit within this rule. In both *Holmgren* and *DeMars*, the initial action addressed the same issues as the subsequent action. That is not true here. In this case, the litigation that the Attorney General relies upon is a special action under section 8.31, subdivision 2, allowing the subject of a civil investigative demand to seek a protective order; it has nothing to do with the merits of the civil enforcement claim under section 8.31, subdivision 3. That point was made more concrete when the Attorney General conceded at oral argument that he was unaware of any prior section 8.31, subdivision 2, petition for a protective order resulting in the entry of judgment.

D-10

the civil enforcement action against Madison Equities, or enforce a remedy against it, if such a civil enforcement action had been filed. The Attorney General has the power to conduct investigations and seek discovery without commencing any civil enforcement action and, separately, the power to file civil enforcement actions. The two are not mutually exclusive. There is nothing in section 8.31 or in any other law that requires the Attorney General to conduct an investigation under section 8.31, subdivision 2, or complete such an investigation, before initiating an enforcement action under section 8.31, subdivision 3. Therefore, nothing in section 8.31 prevented the Attorney General from commencing a civil enforcement action against Madison Equities within the statute of limitations.

The court also properly recognizes that the most common situation in which we have applied equitable tolling to extend a statutory limitations period—a defendant's fraudulent concealment in the form of a "positive affirmative act" (something more than silence) to hide the existence of a legal claim—is not present here. *Minn. Laborers Health & Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 514 (Minn. 2014) (quoting *Township of Normania v. County of Yellow Medicine*, 286 N.W. 881, 884 (Minn. 1939)). There is no allegation that Madison Equities committed fraud in contesting the Attorney General's criminal investigative demand or otherwise fraudulently concealed facts showing that Madison Equities systematically evaded paying overtime.

Indeed, the court acknowledges that nothing in the record suggests Madison Equities did anything other than pursue arguments that it is fully entitled to assert under section 8.31. In fact, in an earlier appeal in this case, we vindicated Madison Equities'

resistance to the Attorney General's civil investigative demand, holding that it was too broad in certain respects. *Madison Equities, Inc. v. Off. of Att'y Gen.*, 967 N.W.2d 667, 675–76 (Minn. 2021). The court points to no facts that support concluding that Madison Equities challenged the civil investigative demand for purposes of delay; it is pure speculation.

This is an important point. Under the tolling rule the court adopts, even a target that challenges a civil investigative demand for legitimate reasons (including when the Attorney General's civil investigative demand may be baseless) loses the protection of the statute of limitations for the period that litigation over the civil investigative demand is pending. Despite the court's assertion in footnote 12 that its new tolling rule will only affect targets who challenge civil investigative demands for purposes of delay and not those who challenge on the merits, the court's approach and new rule lack the nuance necessary to distinguish between the two. If its goal is to disincentivize only civil investigative demand challenges made solely or even primarily for purposes of delay, the court should at the least require proof—and not mere speculation—that the target who made the challenge did so to delay proceedings and run out the limitations period. If that were the rule, however, tolling would not apply in this case.

Finally, in both situations where we have recognized tolling, the tolling principles apply to litigants generally and not to one specific person, entity, or office. Indeed, we have never adopted a tolling rule for a single person, entity, or office.

C.

In this case, the court crafts an entirely new tolling rule for one specific entity: For civil actions filed by the Attorney General under section 8.31, subdivision 3, the limitations period clock stops ticking for the entire time the legitimacy or scope of a civil investigative demand is in litigation.[6] Under the court's rule, tolling is appropriate during that time even if the subject of a civil investigative demand asserts its objections in good faith and, indeed, even if the subject of the civil investigative demand prevails in the litigation over objection.[7]

---

[6]     It is not always clear when litigation over a civil investigative demand terminates. The court holds that, in this case, the tolling period ended on July 20, 2022, when Madison Equities produced the last set of documents responsive to the civil investigative demand. The Attorney General requested additional information from Madison Equities after that date, but did not seek further court assistance in enforcing Madison Equities' compliance. In other words, the new tolling principle the court adopts today terminates when the party being investigated fully complies with district court orders to provide information. I agree with the court that the new tolling principle it is adopting should be constrained in that way and that parties should not be required to seek entry of judgment on the civil investigative demand litigation.

[7]     In the earlier appeal in this case, we concluded that the Attorney General had reasonable grounds to investigate Madison Equities and 10 of its entities affiliated with properties where the complaining security guards worked, but we also raised concerns about the breadth of the civil investigative demand seeking information about 30 other Madison Equities-related companies and we limited the scope of the employee information sought by the Attorney General to hourly workers. *Madison Equities*, 967 N.W.2d at 674–76. The court's holding in this case is not limited to cases where the Attorney General prevails in whole or in part in litigation over the scope of a civil investigative demand; it applies even in cases where a court determines that the Attorney General is entitled to none of the information the Attorney General seeks in a civil investigative demand. I imagine it is neither the court's nor the Attorney General's position that losing in a civil investigative demand proceeding bars the Attorney General from bringing a civil case under section 8.31, subdivision 3.

The court justifies this rule with related versions—one strong and one softer—of a single rationale: the Attorney General needed more time to conduct an appropriate investigation to warrant a civil enforcement action. I find the justification wanting.

First, the court asserts that the Attorney General "lacked sufficient information to file a suit." That assertion is simply wrong. At this point in the case, the district court's determination—based on the allegations in the complaint—that the Attorney General's cause of action accrued by late 2019, when the complaining witnesses provided information to the Attorney General, is uncontested. Thus, the Attorney General had sufficient facts in the fall of 2019 initiate a civil enforcement suit under section 8.31, subdivision 3. The district court concluded that the Attorney General had sufficient evidence to file a claim which would survive a motion to dismiss in 2019, and the Attorney General has never challenged that determination on appeal.[8] Moreover, as I discussed above at D-2 to -3, the district court's determination was based on the allegations in the complaint. In short, the complaint's allegations were sufficient to state a claim of statutory wage theft that would have survived a motion to dismiss under our typical understanding

---

[8] The court claims that it may ignore the fact that, on appeal, the Attorney General did not challenge the district court's determination that he had sufficient evidence to bring a complaint in 2019. It justifies this position because the Attorney General did not argue that his wage theft claim against Madison Equities did not accrue in the fall of 2019. I am unsure why that matters. First, *Madison Equities did argue* that the statute of limitations accrued more than three years before the Attorney General filed his complaint. The issue was indisputably before the district court. The court misunderstands or ignores the *legal implication* of that unappealed determination: It means that we must accept that the Attorney General had sufficient information to bring the complaint in the fall of 2019. Consequently, the undisputed district court determinations in this case contradict the court's justification for adopting a special tolling doctrine for the Attorney General—that the Attorney General did *not* have enough evidence to bring a claim.

of that standard and the court fails to explain why that is not the case. Rather, despite the existence of these very specific allegations, the court looks the other way and simply avers that we must take the Attorney General at his word that he lacked sufficient information to file a suit.

The court's position that complaints alleging credible reports by several employees that their employer wrongly withheld overtime wages do not survive a motion to dismiss alarms me,[9] because this position will, by its plain, logical implication, significantly *limit* the Attorney General's powers under section 8.31. Under the court's analysis, the Attorney General must provide a stronger factual basis for his complaints than other plaintiffs, hamstringing the Attorney General's ability to bring lawsuits that will protect Minnesota consumers and workers.

The court also offers a softer version of its rationale. It posits that the information the Attorney General sought in the civil investigative demand would have allowed him to obtain additional information which may have made his complaint *stronger*—information beyond what he had from the complaining employees in the fall of 2019 which (under the procedural posture of this case and the specific allegations in the Attorney General's civil enforcement action complaint) was sufficient to support initiating a civil enforcement action under section 8.31, subdivision 3. But the possibility that additional investigation (and time for investigation) may reveal information that will strengthen a complaint is not unique to claims brought by the Attorney General; it is true for *every* plaintiff subject to

---

[9]     See *Hansen*, 934 N.W.2d at 327 for the standard for claim accrual under Minnesota law.

statutes of limitations. The rationale does not justify the extraordinary step of creating a special Attorney General carve-out from statutory limitations periods.

The court justifies its special treatment of the Attorney General in part by observing that "[i]n a typical civil action, the plaintiff commences the suit and later conducts discovery seeking support for that claim," implying that the Attorney General does not have all the same discovery tools as any other litigant once he launches a civil enforcement claim under section 8.31, subdivision 3. This is a confusing point. The Attorney General—just like any litigant—can employ all the discovery tools available under the Rules of Civil Procedure to obtain precisely the same information sought in a civil investigative demand *after* commencing a civil enforcement action. Nothing about filing a civil enforcement action within the relevant limitations period limits the Attorney General's ability to ultimately obtain all the information to which he is entitled through discovery—whether the civil investigative demand process is complete or not.

The court also justifies a unique rule for Attorney General civil enforcement claims under section 8.31 because a civil investigative demand puts the target of an investigation on notice that it may be sued sometime in the future. The court reasons that such notice means we can ignore the practical fair-litigation worries that justify statutes of limitations—fading memories, disappearing witnesses—as well as set aside a potential defendant's interest that a definitive moment will arrive when the defendant may enjoy the peace of mind that it will *not* be sued—a circumstance that carries different and more significant burdens than an investigation. *Weavewood, Inc. v. S & P Home Inv., LLC*, 821 N.W.2d 576, 580 (Minn. 2012). Further, potential defendants in non-section 8.31

litigation often get notice well before litigation begins that they may be subject to suit—notice that requires them to preserve evidence. *See Miller v. Lankow*, 801 N.W.2d 120, 127–28 (Minn. 2011). Yet in the usual course we do not toll the running of the limitations period simply because potential defendants have "notice." Again, the court is creating a special tolling rule merely because the Attorney General is the Attorney General.

Of course, information learned through a civil investigative demand could refute or substantially undermine initial reports that the subject of the civil investigative demand violated the law. That is certainly true, and it is one of the reasons justifying the Attorney General's civil investigative demand power. *See Kohn v. State ex rel. Humphrey*, 336 N.W.2d 292, 296 (Minn. 1983) (stating that a purpose of the civil investigative demand power is to allow the Attorney General to "ascertain if there is any substance to . . . complaints from the party who is perhaps in the best position to know, namely, the party against whom the complaint is made"). And in some cases, the additional inquiry may benefit subjects of section 8.31 investigations like Madison Equities. But the potential benefit to subjects of a section 8.31 investigation does not justify the rule the court announces that strips away more significant protection for those same entities—the important protections a limitations period provides in offering peace of mind and avoiding the risks associated with fading memories and lost evidence. *See Abbott v. McNeff*, 171 F. Supp. 2d 935, 939 (D. Minn. 2001); *Weavewood*, 821 N.W.2d at 580.

The Attorney General's investigative powers may also help avoid the burden of filing unnecessary "bare-bones complaint[s]." *Kohn*, 336 N.W.2d at 296. In *Kohn v. State ex rel. Humphrey*, we explained that this possibility is one reason why the *existence* of the

investigative demand power is a useful tool from a public policy perspective. *Id.* But those reasons do not justify a leap from identifying the tool's usefulness to concluding that it justifies eliminating the otherwise-applicable and important protections limitations periods provide. That leap is certainly not present in the text of section 8.31. I am also uncertain how we distinguish a "bare-bones complaint" from a complaint with sufficient muscle and flesh.[10] *Kohn*, 336 N.W.2d at 296.

It is true, as the Attorney General argues, that the Legislature granted the Office of the Attorney General broad powers. *See Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 898 (Minn. 2012). But it also placed statutory limitations on those powers.[11] And there is no dispute that the Legislature intended relevant statutes of limitations—another important

---

[10]    This conceptual indeterminacy in many respects mirrors the notion that the limitations period for an enforcement action the Attorney General brings under section 8.31, subdivision 3, begins to run when the Attorney General has "becom[e] satisfied," Minn. Stat. § 8.31, subd. 3, that a person is violating, or is about to violate, a law "respecting unfair, discriminatory, or other unlawful practices in business, commerce, or trade," Minn. Stat. § 8.31, subd. 2. I discuss the "becom[es] satisfied" argument in Part D. I worry the court is creating much more confusion for future litigants.

[11]    I have written in support of an expansive understanding of the Attorney General's power to enforce laws respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade. *See, e.g.*, *Findling v. Grp. Health Plan, Inc.*, 998 N.W.2d 1, 7 & n.4 (Minn. 2023); *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 134–35 (Minn. 2019). But the Legislature also limited those broad powers, particularly the power to require people to turn information over to the government without the government first initiating a civil action. Section 8.31 imposes court oversight of demands for information by authorizing those who are subject to civil investigative demands to seek protective orders in response to such demands. Minn. Stat. § 8.31, subd. 2 (stating that "[t]he applicable protective provisions of rules 26.02, 26.03, and 30.04 of the Rules of Civil Procedure for the district courts shall apply to any discovery procedures instituted pursuant to this section"). The protective order remedy of which Madison Equities availed itself is a critical part of the statutory scheme.

protection for Minnesotans—to apply to enforcement actions brought under section 8.31, subdivision 3. In the nine separate and detailed provisions of section 8.31 there is nothing to suggest that the Legislature thought an ongoing dispute about the scope of a civil investigative demand gives the Attorney General permission to ignore a statute of limitations.[12]

Notably, in judicially creating a new tolling rule for the Attorney General, the court is relying entirely on policy considerations it projects onto, but which are not stated in, section 8.31. Indeed, if the Legislature (which created the Attorney General's civil investigative demand power in the first place) had determined that the public policy interests civil investigative demands serve (weighed against the countervailing public policy interests limitations periods serve) justified extending the limitations periods in a manner similar to that adopted by judicial fiat today, it readily could have done so—and remains in a better position to do so. The Legislature could amend section 8.31 to provide some version of the rule the court adopts today. It could enact a different accrual rule or a different limitations period for Attorney General enforcement claims under section 8.31.

---

[12] The Attorney General suggests that if we do not allow him to continue to pursue this case against Madison Equities, we will somehow be forcing the Attorney General to file complaints before he wants to do so and, in so doing, impinge on the Attorney General's discretion in a way that raises separation of powers issues. I observe only that it is the *Legislature* that enacted the statutory limitations periods—Minnesota Statutes §§ 541.05, subd. 1(2) (2024), 541.07(5) (2024)—that the Attorney General agrees apply to section 8.31 actions. The Attorney General is asking *the courts* to create an exception to the statute that the *Legislature* enacted—and in which it chose not to carve out an exception. I am not sure precisely which way separation of powers concerns run in that situation, but I feel confident the concern is not the one the Attorney General identifies.

As it stands, however, the statute the Legislature did enact does not include either of these exceptions.

I do not suggest that the fact that the Legislature enacted the civil investigative demand power in a detailed and carefully crafted statute, or that it has the power to recalibrate that power through amending that statute, deprives us of the authority to create a new tolling rule. That fact, however, along with due deference to the legislative power and our own reluctance to override statutes of limitations with judicially created tolling rules in anything other than exceptional circumstances, should certainly weigh against creating a new tolling rule that applies *only* in cases involving that statute and the powers it grants and withholds. We have never adopted a tolling rule in a situation like this which only applies to a power that is solely a statutory creation.

D.

A final observation is in order: Although the court labels the rule it adopts as a new tolling rule and disavows that this case has anything to do with accrual of claims, the reality is that the court wholly relies on a new and unique "becom[es] satisfied" standard of accrual for section 8.31 enforcement actions the Attorney General brings in order to justify adopting the new tolling rule. Minn. Stat. § 8.31, subd. 3. And the court does so even though the Attorney General floated, but then disclaimed for purposes of this case, the proposition that he may not commence a civil action under section 8.31 until he "*becom[es] satisfied*" that one or more of the applicable laws described in section 8.31, subdivision 1, "has been or is being violated, or is about to be violated." Minn. Stat. § 8.31, subd. 3 (emphasis added). The plain implication of the court's reliance on the "becom[es]

satisfied" language is that section 8.31 requires something *more* than "the existence of operative facts supporting each element of the claim" to initiate a claim that can survive a motion to dismiss. *Hansen*, 934 N.W.2d at 327. This is concerning because neither the court nor the Attorney General[13] articulates any test or considerations that would allow a court or an entity potentially subject to a section 8.31 action to know when such a claim accrues and, hence, when the limitations period ends. If anything, the standard seems to turn entirely on the Attorney General's discretion (he, after all, is the one who must "becom[e] satisfied"). Essentially, the court adopts a standardless-standard: The only way to know if the Attorney General has become satisfied is when the Attorney General says he has become satisfied. The Attorney General's word is seemingly the beginning and end of the analysis.

Further, as I observed earlier, the "becom[es] satisfied" standard of accrual also means that the Attorney General *cannot* bring an enforcement action until he becomes satisfied. *See Hansen*, 934 N.W.2d at 327 (explaining that accrual occurs when operative facts supporting each element of the claim exist sufficient to survive a motion to dismiss). If I were the subject of a section 8.31 enforcement action, I would strongly consider moving to dismiss the action on the ground that the Attorney General did not satisfy the more

---

[13] In fairness, the Attorney General disavowed the notion that "becom[es] satisfied" is a unique accrual rule for section 8.31 claims. Accordingly, the Attorney General would not be expected to articulate how courts or litigants will know when the Attorney General has become satisfied he can bring a claim.

stringent "becom[es] satisfied" standard before bringing the action.[14]  Minn. Stat. § 3.81, subd. 3.

*       *       *

In the end, I am concerned that this is a case of bad facts making bad law. Cracking down on wage theft is important for Minnesotans, and the Attorney General is critical to accomplishing that purpose.  Unfortunately, the Attorney General did not bring this $26,000 Minnesota Fair Labor Standards Act civil enforcement action within the statutory limitations period.  For any other litigant, I have little doubt we would hold that the failure to satisfy the statute of limitations dooms the claim despite pleas from the plaintiff that she needed more time to investigate.  By refusing the Attorney General's invitation to create a special tolling rule, we would not be rendering the five-decade-old civil investigative demand power futile.  Rather, that power has long served, and will continue to serve, an important purpose.

---

[14]     As further justification for its adoption of a "becom[es] satisfied" rule of accrual for enforcement actions brought by the Attorney General under section 8.31, subdivision 3, the court observes that the purported "becom[es] satisfied" standard must be different from the "reasonable ground" standard for initiating civil enforcement investigations under section 8.31, subdivision 2.  That is undoubtedly true, but it has no material bearing on whether the "becom[es] satisfied" language in section 8.31, subdivision 3, established a distinct accrual rule for enforcement actions.  As the Attorney General recognizes, the "reasonable ground" standard is also different than the general accrual standard stated in *Hansen v. U.S. Bank National Ass'n*.  The fact that the two standards are set forth in section 8.31, subdivisions 2 and 3, tells us nothing about whether the Legislature intended the "becom[es] satisfied" standard in subdivision 3 to replace the general accrual standard applicable in civil cases generally.

For these reasons, I would affirm the well-founded decisions of the district court and the court of appeals.[15]


HENNESY, Justice (dissenting).

I join in the dissent of Justice Thissen.

---

[15]    The Attorney General also argues that the six-year statute of limitations in Minn. Stat. § 541.05, subd. 1(2), applies.  The majority does not reach the issue.  The court of appeals rejected this claim in a well-reasoned opinion. *State of Minn. Off. of the Att'y Gen. v. Madison Equities, Inc.*, No. A24-0107, 2024 WL 4259298, at *6–7 (Minn. App. Sep. 23, 2024).